NEW AMSTERDAM CASUALTY CO. v. SHIELDS.

(Circuit Court of Appeals, Sixth Circuit.    June 15, 1907.)

No. 1,658.

1. INSURANCE—ACTION ON ACCIDENT POLICY—QUESTIONS FOR JURY.

The question whether appendicitis, which caused the death of an insured, was caused by an accident or was the result of a diseased condition existing prior to the accident, *held* properly submitted to the jury, where the testimony of physicians testifying as experts was conflicting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1745.]

2. SAME—ACCIDENT INSURANCE—CAUSE OF DEATH.

In an action to recover for the death of an insured upon an accident policy which provided that "loss of life by accident as used in this policy shall be deemed to mean death from bodily injuries * * * which independently of all other causes are effected solely and exclusively by external and accidental means and which shall result in the death of the assured," it was shown that the insured while riding in a buggy was thrown against the dashboard, striking his abdomen; that the same night he complained of pains, and five days later was operated on for appendicitis, and a week after the accident died from septic peritonitis which resulted from appendicitis. Ten or twelve years before he had twice had appendicitis, but apparently recovered. *Held*, that the jury were properly instructed that if the insured had fully recovered from the former attacks, so that the disease no longer existed in his body, and there was only a susceptibility to it if a proper exciting cause should arise, and the fall against the dashboard was such cause, the case would be one for recovery under the policy; but that if the disease still actually existed, and was liable to be and was in fact rendered active and virulent by the injury sustained, his death was the joint result of the injury and the latent disease, and there could be no recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1186, 1779.

Accident insurance. Risks and cause of loss, see note to National Acc. Soc. v. Dolph, 38 C. C. A. 3.]

3. SAME—ALLOWANCE OF ATTORNEY'S FEES—TENNESSEE STATUTE.

The allowance of $1,000 attorney's fee to the plaintiff in an action to recover on an accident policy for $5,000 *held* within the discretion of the jury under Tenn. St. 1901, c. 141, p. 248, which authorizes such an allowance, not exceeding 25 per cent. of the liability on the policy, on a finding that the refusal to pay the loss was not in good faith.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Clarence T. Boyd, for plaintiff in error.

Walter Stokes, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge.    This was a suit upon a policy of accident insurance issued by the New Amsterdam Casualty Company to Oliver H. Shields for the sum of $5,000, his wife, Julia M. Shields, being the beneficiary.    The policy provided that in case of loss of life by accident the company would pay Julia M. Shields $5,000, and also for any surgical operation for appendicitis $100.    While the policy was in force, on Thursday, September 7, 1905, Mr. Shields was driving in a buggy, when a front wheel ran off and he was thrown against

the dashboard, striking his abdomen. That night he complained to his wife of pain in his bowels, especially on the right side. The next day, Friday, he was at his office, and that afternoon spoke to his family physician, Dr. Wood, of the accident and of the soreness in his bowels. That night he was suddenly seized with severe cramping pains in the abdomen, nausea, vomiting, high fever, and rapid pulse. Dr. Wood could not be reached, so Dr. Ewing was called over the telephone and prescribed castor oil and morphia. On Saturday his condition was worse. Dr. Wood was sent for, and upon his arrival found the patient suffering severely from pains in the abdomen; had been vomiting, temperature high, pulse rapid and irritable, abdomen distended, and his right side very tender and rigid. On Sunday morning, Dr. Douglas, a surgeon of high reputation, was called in consultation by Dr. Wood. They diagnosed the case as acute appendicitis, and that afternoon removed the patient to Dr. Douglas' infirmary. The following Tuesday, September 12th, Dr. Douglas, with the assistance of Drs. Wood and Tigert, performed an operation. This disclosed that the trouble was acute appendicitis, septic peritonitis, and locked bowel. Mr. Shields died on Thursday, September 14th.

Obviously, the question of fact in the case was whether the fall against the dashboard of the buggy caused the attack of appendicitis which brought about the death of the insured. It appears that Mr. Shields had had two attacks of appendicitis 10 or 12 years before his final one. The physicians and surgeons who attended him during his last illness all testified that he died from acute appendicitis, complicated with septic peritonitis and locked bowel, and these diseases were the direct results of the injuries he received when he fell or was thrown against the dashboard of his buggy. On the other hand, three physicians and surgeons of prominence, living in Nashville, testified as experts that the fall of Mr. Shields could not have caused the third attack of appendicitis which resulted in his death, but that the immediate cause of his death was septic peritonitis as the result of chronic recurrent appendicitis. During the trial, the plaintiff below amended her declaration so as to claim the statutory attorney fee of not exceeding 25 per cent. of the liability on the policy. The jury rendered a verdict for $6,286.86, being the face of the policy, $5,000, and the interest thereon, $186,86, a surgical bill of $100, and the attorney fee $1,000. Two questions are raised, or sought to be raised, respecting the recovery of the face of the policy. It is insisted, in the first place, that the court should have directed a verdict for the defendant on the ground that the evidence did not justify the jury in finding that the attack of apendicitis which brought about the peritonitis and locked bowel, which ended in his death, was caused solely by his fall against the dashboard of the buggy; and, in the next place, that, even if the case was properly submitted to the jury, the instructions of the court were erroneous.

We are not disposed to go into a discussion of the evidence in the case. The surgeons were naturally divided in their views. Those who attended Mr. Shields were clear in the opinion that the attack of appendicitis which terminated fatally was caused by his fall against the dashboard of the buggy, and those who were called as experts

only, and gave their opinion upon a hypothetical case, were equally clear in the view that the attack of appendicitis was not caused by the fall, but that the septic peritonitis and locked bowel, which brought about his death, was occasioned by a crippled or diseased appendix, as the result of chronic recurrent appendicitis. Under the circumstances, in the conflict of testimony upon a vital point, the court submitted the matter to the jury, giving full instructions upon the law of the case. These instructions we shall now consider.

In them, the court, after directing attention to the pertinent provision of the policy, drew the distinction between a disease and a mere susceptibility to disease. The policy provides:

"Loss of life by accident as used in this policy shall be deemed to mean death from bodily injuries not intentionally inflicted by the assured, which independently of all other causes are effected solely and exclusively by external, violent and accidental means and which shall result in the death of the assured within ninety days of the event causing the injury."

In this case it is conceded that the disease of appendicitis, with its consequences and complications, caused the death of the insured, but the real question of fact lies farther back, and is, whether the fall against the dashboard, acting independently of any other cause, produced this disease. If the insured recovered from his former attacks of this disease, so that it no longer existed in his body, and there was only a susceptibility to have it in case a proper exciting cause should arise, and in this case the fall against the dashboard proved to be such exciting cause, the case would be one for recovery under the policy; but if because of the former attacks there was not merely a susceptibility to a further attack, but the actual disease itself existed, liable to be rendered active and virulent by an injury such as that suffered by the insured, in that event the active disease which resulted in death would not be regarded as the result of the fall alone, but as the joint result of the fall and the latent disease, and hence there could be no recovery under the policy.

The portion of the charge to which exception is especially taken is the following:

"Now, there is another phase of it: Now, if this man had an actually diseased appendix, if it was not merely a liability or predisposition on account of previous attacks, but an actual state of disease, then existing at the time, and this accident simply aggravated or hastened that disease or process. why then the defendant would not be liable under the authorities and under the interpretation of this policy. And if the death resulted in that way and from that cause, as the efficient thing, your verdict should be for the defendant. You want to distinguish, now, between a diseased state and a mere susceptibility.

"If the man previously, at any time in the last 10 or 12 years, had appendicitis, it is in accordance with the weight of the medical testimony before you that a man that has suffered in that way is more susceptible to another attack than a man that has never had an attack. Of course, it is presumably true, and is so, according to this medical testimony, that all of us carry with us some liability to an attack, owing to the fact that we carry this germ called the 'colon bacillus,' which is enough, so far as its name is concerned; but that is not a susceptibility, that is an ordinary condition. But if a man has had an attack or two it may make him more susceptible than a person who has never had an attack, just as a man who has had the influenza or the grip and has already got it in his throat, the result of that, although it may be cured for practical purposes, he may take another case

more easily than a man who has never had it. And other conditions are called 'susceptible conditions.' Now, that would not be a disease, provided the previous attacks had passed away and the man had become well, although he might, in consequence of that and of the condition of his system, have been more liable to have an attack provoked than a man who had never been in that condition. That would be a greater liability or a greater susceptibility."

In this charge the court seeks to draw the distinction between a disease which is caused by the accident and one which is not caused by the accident, but exists in the insured and co-operates with the accident to produce the ultimate injury. This case is not covered by such an accident policy. 1 Cyc. p. 262. To come within its terms, if a disease plays a part, it must be in consequence of the accident. In Mutual Accident Assn. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, the insured, by jumping from a platform to the ground, produced a stricture of the duodenum, which resulted in inflammation of that organ, from which he shortly died. The death was held to be the result of an accident and within the terms of the policy. In the case of Manufacturers' Accident Indem. Co. v. Dorgan, 7 C. C. A. 586, 58 Fed. 945, 22 L. R. A. 620, decided by this court, the insured, who was fishing by a stream, fell into the water during a temporary indisposition and was drowned. It was held that death was accidental, and a recovery under the policy was sustained. Similar are the cases of Winspear v. Insurance Co., 6 Q. B. Div. 42, and Lawrence v. Accidental Ins. Co., 7 Q. B. D. 216. In the first, the insured, while fording a stream, was seized with an epileptic fit, fell into the stream and was drowned; and in the second, the insured, while standing on a railway platform, was seized with a fit, fell from the platform across the track, and was run over and killed by a passing train.

If, however, instead of placing the insured in a position where he suffers from another accident, as in the cases we have described, the first accident brings about a disease, the company is liable for death caused by such disease. Thus, in the case of Delaney v. Modern Accident Club, 121 Iowa, 528, 97 N. W. 91, 63 L. R. A. 603, the insured, in friendly scuffle, had his finger cut by a steel eraser. Erysipelas and blood poisoning followed, with death. The court held that the disease was not concurrent with the injury, but was a natural result of it, and that the resulting death was solely due to the injury and not to any independent cause. In McCarthy v. Travelers' Ins. Co., 8 Bissell, 363, the insured, while exercising with Indian clubs, ruptured a blood vessel in his lungs, so that inflammation set in and death ensued. The jury, under instructions, found that the injury to the lungs produced a disease which resulted in death. In the case of Freeman v. Mercantile Accident Ass'n, 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 735, the insured died of peritonitis localized in the region of the liver and induced by a fall. He had previously had peritonitis in the same part, and the disease had produced effects which rendered him liable to its recurrence. The presiding justice said to the jury:

"The question as to whether peritonitis, if that caused his death, is to be deemed a disease within the meaning of this policy, and the proximate cause of death within the meaning of this policy, so as to prevent a recovery, depends upon the question whether or not before the time of the fall, and at

the time of the fall, he had then the disease—was then suffering with the disease. If he was, then in the sense of the policy, although aggravated and made fatal by the fall, he cannot recover. But if, owing to existing lesions caused by that disease, but not having the disease at the time, the same kind of malady—that is, peritonitis—was started up, the company are to be answerable, although, if there had been a normal state of things the fall would not have occasioned such a result." 156 Mass. 354, 30 N. E. 1013, 17 L. R. A. 735, citing cases.

Many other cases might be cited. The conclusion we reach is that the court below properly submitted to the jury the question whether the disease of appendicitis, which brought about the death of the insured, was itself caused solely by the fall against the dashboard.

Since we have already held that the jury acted within its province in finding that the death was accidental, within the meaning of the policy, we necessarily sustain the court below in directing a verdict for the surgical fee of $100 provided in the policy for the operation for appendicitis. And we do not feel disposed to disturb the verdict for $1,000 attorney fees. The statute of Tennessee of 1901, c. 141, p. 248, gives the court power to impose as a penalty a sum not exceeding 25 per cent. of the liability on an insurance loss, where it is satisfied that the refusal to pay the loss was not in good faith, and that additional expense upon the policy holder has been inflicted as a result. The constitutionality of this act has been sustained by the highest court of Tennessee, upon the authority of numerous decisions of the Supreme Court of the United States. Insurance Co. v. Whittaker, 112 Tenn. 151, 171, 79 S. W. 119, 64 L. R. A. 451, 105 Am. St. Rep. 916. We are not disposed to quarrel with the action of the court and jury in the exercise of the discretion imposed by this statute.

Judgment affirmed.