BEDILIA WARD, APPELLEE, v. ÆTNA LIFE INSURANCE COMPANY, APPELLANT.

FILED OCTOBER 22, 1908.   No. 15,279.

1. **Evidence:** INJURY: RES GESTÆ. In an action brought to recover upon an accident insurance policy, where the question is whether death resulted from an accidental injury for which the insurer is admitted to have been liable, the bodily condition of the insured between the date of receiving such injury and his death is a relevant fact, and all things done or said by the insured which expressed or showed his bodily condition in reference to the injury are relevant.

2. ——: HYPOTHETICAL QUESTIONS. Where his opinion as to the cause of death is asked of a physician called as a witness, it is neither necessary nor proper to include in the hypothesis the fact that the attending physician had pronounced the patient cured of an injury from which it was claimed his death resulted.

3. ——: ——. Error is not committed in permitting a hypothetical question which fairly reflects the case as made by the plaintiff because other facts afterwards established by the defendant's evidence are not included in the question. The fact that the defendant's evidence is on file in the form of a deposition does not alter the rule.

4. **Insurance:** ACTION ON POLICY: QUESTION FOR JURY. Whether the death of a person whose life was insured against death by accident was caused by an admitted accident or resulted from some

other cause is a question for the jury, unless the proofs as to such cause of death are so convincing that from them all reasonable men in the fair exercise of their judgment would adopt the same conclusion.

5. ———: DEATH: PROXIMATE CAUSE. Where a person accidentally injured is insured against accident under a policy which provides for the payment of a sum named in case death results solely from such injury within 90 days, all morbid changes in the exercise of vital functions or the texture of bodily organs which result from or are induced by· such injury should be regarded as the effect thereof, and not as independent causes; and, when death results from such morbid changes, it is caused by such accident within the meaning of such policy.

6. ———: ———: ———. Where a person, after recovery from an accidental injury, succumbs to a disease which would not have been fatal but for the lowered vitality following such injury, the disease, and not the lowered vitality, is the cause of death.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Greene, Breckenridge & Matters,* for appellant.

*Weaver & Giller* and *John M. Macfarland, contra.*

CALKINS, C.

The defendant issued an accident insurance policy to plaintiff's son on the 1st day of December, 1904. On August 1, 1905, the insured, who was by occupation a locomotive fireman, was injured in an accident occurring while he was at work in the railroad yards at Omaha. He was treated for this injury by his employer's physician, Dr. Smith, until August 9, 1905, when he was pronounced cured. On August 15 he again entered upon his duties as fireman upon a train leaving Omaha for Grand Island that night at about 11:30 o'clock. He performed his usual duties until reaching Central City the next day, when he became so ill as to be unable to fire his engine from that point to Grand Island. On reaching Grand Island, he went to a hotel, whence he was removed the next morning to the hospital, where he died that evening. The plaintiff,

who was the beneficiary named in said policy in case of death, brought this action, claiming that the injuries suffered by the insured on the 1st of August caused his death. The liability of the defendant for the accident occurring on the 1st of August was not denied, but it was contended that said injury was confined to the crushing or bruising of one foot of the insured, and that his death was not caused by said accident. There was a verdict for the plaintiff, from which the defendant appeals.

1. The plaintiff offered evidence as to complaints made by the insured concerning his bodily suffering from the time of his injury to the date of his departure on the trip to Grand Island. This evidence was objected to on the ground that it was hearsay; and its reception is now assigned as error. The rule in such cases, as stated by Mr. Stephen (Digest of the Law of Evidence, art. 11), is that, when any bodily feeling or state of the body of any person is a fact in issue or relevant to the issue, all things done or said by any such person which express or show the existence of any such state of body in reference to the particular matter in question are relevant, although they may not have been done or said on the occasion when the fact in issue happened. This rule has been recognized by our own court in *Western Travelers' Accident Ass'n v. Munson,* 73 Neb. 858, where it is said: "Statements of fact fairly indicative of a relevant bodily condition of the declarant at the time of the declaration will be received as circumstantial evidence of the existence of that condition, although made a considerable time after the injury was received." The claim of the plaintiff being that the injuries received by the insured on the 1st day of August caused bodily lesions which continued, and resulted in his death two weeks later, his bodily condition during that period was relevant to the issue. It therefore follows, under the rule above stated, that the things done or said by the insured which expressed or showed the state of his body were admissible.

2. The plaintiff called a physician, Dr. Walker, to whom

the principal facts concerning the injury were stated, and asked his opinion as to the cause of the death of the insured, assuming the facts so stated to be true. The defendant contends that the hypothetical question so propounded did not fairly reflect the evidence because it did not include the statement that the doctor who had treated the insured for the injury had discharged him. We do not think the plaintiff was bound to include in the hypothetical question this fact. To have done so would have required the witness to base his opinion partly upon the opinion of the attending physician, when he should be required to give his judgment independently upon the facts stated to him.

3. Another contention of the defendant was that the hypothetical question did not include the symptoms which developed after the removal of the insured to the hospital at Grand Island. At the time the hypothetical question was asked by the plaintiff, evidence of the symptoms of the insured after his removal had not been offered. We do not think that in making his case the plaintiff was bound to anticipate facts to be proved by defendant, nor to include them in a hypothetical question. It is enough if such question fairly reflects the case as made by the plaintiff. The fact that such testimony was on file in the form of a deposition does not alter the rule. Such deposition might or might not be offered; and the plaintiff was not bound to anticipate its introduction.

4. It is strongly insisted that the court erred in refusing to direct a verdict for the defendant. It was contended by the defendant that the crushing of the foot of the insured was the extent of his injuries, while the plaintiff claimed that he was also hurt in his side. The plaintiff's evidence as to the bodily condition of the insured at the time he left on the trip to Grand Island depended largely upon complaints made by him to his mother and sisters as to the existence of pain in his left side and groin. The significance of these pains was not explained by any of the professional witnesses called, and the jury,

were left, if it believed the testimony of the members of the family of the insured, to draw without expert guidance such inference as seemed proper to it concerning the bodily condition indicated thereby.  To the nonprofessional person pain is usually considered an indication of functional or organic derangement; and the jury, if it believed the insured suffered from such pains, might have drawn therefrom the inference that lesions of the affected parts still existed to which could be attributed his death, in the absence of any intervening cause.

The plaintiff, as we have already seen, called Dr. Walker, who was allowed to give his opinion of the cause of death in answer to a hypothetical question propounded to him, and he testified that he considered the injury the relative cause of the death.  The evidence as to the cause of death offered by defendant was not at all conclusive. It appears that the weather was hot; that the insured drank more or less cold water before arriving at Central City, and that he there became sick and vomited.  Dr. Hoge, the physician at Grand Island, says that the patient's skin was cold and clammy and his temperature a little subnormal at the time he came under his care, and that he diagnosed the case as one of heat exhaustion. Further testifying, he says the patient told him he had been working hard; that it was an exceptionally hot day, and that he had drank several gallons of ice water; and the doctor attributed his death to being overheated and to the drinking of the ice water, and finally gave the cause of death as collapse.  Dr. Smith testifies as to treating the injured foot, but he does not disclose what, if any, examination he made of the patient to discover the extent of his injuries.  A hypothetical case was submitted to Dr. Smith, omitting the evidence of complaints made by the insured as to pains in his side, but otherwise fairly reflecting the evidence, and he was asked whether the facts indicated that the death of the insured resulted from the injury of August 1.  His answer was: "My opinion is that the injury had nothing to do with this other trouble.

Simply because I released him would show, so far as the injury was concerned, he was well and able to work." From this reply it would seem that Dr. Smith was principally concerned in vindicating his former diagnosis of the case. It is unfortunate that the only physicians who saw and treated the insured appear to have given the case such perfunctory attention. Both Drs. Hoge and Smith were in the service of the employer of the insured, whose interest it was to minimize the effects of the accident and to establish another cause of death; and the latter was also in the service of the defendant. This is to be given due consideration in determining the value of their opinions. Four other physicians were called by defendant, and upon a hypothetical case submitted to them gave as their opinion that the injury received by the insured August 1 was not the cause of his death. Three of them expressed the opinion that his death was caused by heat exhaustion, and the fourth that it was due to heart failure caused by overexertion and the drinking of ice water while in a state of overheat. In the hypothesis submitted to these witnesses, the fact that the insured had been treated by Dr. Smith for the injury and pronounced cured, or, to use the exact language, "released," was included. This was, as we have already seen, unnecessary, and is, we think, objectionable. The witness might understand that he was to assume the correctness of Dr. Smith's diagnosis, in which case the opinion he gave was not his own; and, if he did not so construe the question, he would be placed in the embarrassing position of criticising the conclusion of another member of his own profession. An expert witness should give his own judgment uninfluenced by the opinion of other experts; and a hypothetical question in which the opinion of another expert is stated is objectionable.

Again, in each question the drinking of large quantities of ice water was one of the facts assumed, and it seems to have been regarded as an important element by some of the physicians testifying. Yet this assumption was

founded wholly on the evidence of statements said to have been made to Dr. Hoge and the nurse by the patient. The direct testimony of the engineer for whom the insured was firing, as to the drinking of water, is that the insured went over to a windmill at Thummel and got a pail of water, and that before that both he and the insured drank "the water" until it got warm. Whether by "the water" he meant the water in the tank it is unnecessary to decide. Nothing was said by him to show that there was any ice water accessible, and the jury would have been justified in rejecting that part of the hypothesis as not proved. It certainly cannot be said that the evidence was so clear in support of one theory that no reasonable man fairly exercising his judgment could have refused his assent thereto.

The question whether the death of the insured was caused by the accident was therefore one to be submitted to the jury, and the court did not err in refusing to direct a verdict. *Modern Woodman Accident Ass'n v. Shryock,* 54 Neb. 250.

5. In the fourth instruction to the jury, given by the court on its own motion, the jury were told that the theory of the plaintiff's case was that the condition of the weather, the exertions of the insured, what he drank or might have eaten, and the different incidents of the trip to Grand Island brought on acute bodily disease from which he died, but that said causes would have been without avail to occasion such death if he had not been in a weakened and debilitated condition in consequence of the injuries received by him on the 1st day of August, and that, if the jury so believed, they might find for the plaintiff. The insurance was against bodily injuries effected through external, visible and accidental means, and the particular clause of the policy under which the plaintiff sought to recover provided that the defendant should pay the amount of the policy if death resulted solely from such injuries within 90 days. Great stress is placed by defendant upon the use of the word "solely"; and it is

urged that the effect of its use is to preclude a recovery if any other disorder manifests itself and causes or contributes to the cause of death. If the word "solely" is left out of the sentence, the logical meaning of the clause is not changed. It is still required that death should result from the injury, and this excludes the idea of other independent or cooperating causes. Starting with a bodily injury, all morbid changes in the exercise of vital functions or the texture of the bodily organs which result from or are induced by such injury should be regarded as the effect thereof, and not as independent causes. When death results from any such morbid change so resulting from or induced by such injury, the injury, and not the morbid change induced by it, is the cause of death. Beginning with a primary cause, conditions induced by such cause are effects thereof, and every condition so induced must be considered in relation thereto as an effect, and not as a cause. This doctrine, if not stated in so many words, is illustrated by the case of *Delaney v. Modern Accident Club*, 121 Ia. 528, where erysipelas and blood poisoning followed an insignificant cut; and it was held that disease brought about as the result of a wound is properly attributed to the wound, and death resulting from the disease is death resulting from the wound.

6. The instruction complained of goes still further, and permits the jury to find for the plaintiff, even if it should believe that no morbid condition remained as the result of said injury, if it found that the insured succumbed to causes which would not have produced death but for his lowered vitality. The power of the healthy body to resist disease varies greatly in different individuals, and in the same individual at different times. Undoubtedly a lower state of this power follows convalescence from a serious injury for a considerable period, and an attack of disease is more likely to prove fatal when the patient is found in such lowered state. When an attack of disease is followed by death, which would not have occurred but for the lowered vitality of the patient, such lowered state may

be considered as a condition that opens the way for the production of the effect, but not as its cause. In other words, it is not the cause of death, but the occasion, in that sense of the latter word in which it is understood to mean that which furnishes an opportunity for the event to occur, without being itself the efficient cause or sufficient reason therefor. Under the instruction referred to, the jury were authorized to consider any lowered vitality of the insured as a cause of death if they believed that death would not have occurred if the insured had been as strong in the power of resistance as before the injury, even though it might believe he was cured of the injury proper. For this reason, we think the giving of the instruction complained of was error.

Objections to other instructions were argued, but, as the same questions are not likely to recur, it is not necessary to discuss the same.

We recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.