# CHARLOTTE G. LUDWIG v. PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK.[1]

### February 24, 1911.

### Nos. 16,590—(193).

**Accident insurance — evidence — exclusive proximate cause of injury.**
> In an action to recover upon an accident insurance policy, it is *held*
> that the evidence was sufficient to justify the jury in finding that decedent
> was injured by accidental means, and that the injury so received was the
> proximate cause of his death, and, further, that the record presents no re
> versible errors in rulings or any instructions to the jury.

Action in the district court for Hennepin county to recover
$5,000 upon an accident insurance policy. The defenses set up in
the answer are stated in the opinion. The reply alleged that after
the accident plaintiff, as soon as reasonably possible, gave to defendant notice thereof, and defendant waived all objection to such notice
and waived the requirement of any other or different notice; that
no loss had resulted to defendant by reason of the alleged failure to
comply strictly with the requirements of the policy regarding such
notice; that all terms of the policy providing that a failure to give
such notice should result in a forfeiture of the right of the insured,
were contrary to public policy and void.

The case was tried before Holt, J., who denied defendant's motion
for a directed verdict, and a jury which returned a verdict in favor
of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a
new trial, it appealed. Affirmed.

*M. H. Boutelle* and *N. H. Chase,* for appellant.

*Clarke & Carmichiel, Edward W. Hawley,* and *Keith, Evans,
Thompson & Fairchild,* for respondent.

[1]Reported in 130 N. W. 5.

[Note] What constitutes an accident within meaning of accident insurance policy, see notes in 30 L.R.A. 206; 5 L.R.A.(N.S.) 296.

[JAGGARD, J.] [1]

An action was brought to recover the measure of indemnity, fixed in case of death at $5,000, on a policy of accident insurance in which plaintiff and respondent was designated as beneficiary, issued by defendant and appellant to plaintiff's husband. Defendant insured "against disability or death as herein defined, resulting directly, independently, and exclusively of any and all other causes from bodily injury effected solely through external, violent, and accidental means." One defense was that the death of the insured was not caused by accidental means, within the meaning of this paragraph. The other defense concerned notice and proof of death and other formalities. The case was tried to a jury, which returned a verdict in the full amount for the plaintiff. This appeal was taken from the order of the trial court denying defendant's alternative motion for judgment notwithstanding the verdict or a new trial.

1. The first controversy is whether the sole and exclusive proximate cause of death was external and violent.

The written application of the assured stated **that he** never had had physical infirmities or defects, and had not received medical or surgical attention within seven years immediately preceding. The application was incorporated into the policy.

During the fifth or sixth inning in a game of baseball, in which assured was engaged, he attempted to "steal second," and slid head-foremost on his stomach the last nine or ten feet of the distance, stopping with his stomach over and upon the second base. This base consisted of a piece of a cement sidewalk paving block or slab, about two inches thick and twelve inches square, rough on one edge and smooth on the others. Plaintiff was declared "out," and according to some testimony stooped with his arms across his stomach. He walked back, and indicated that he was hurt and where. He, however, continued to play until the end of the game, but manifested pain. A day or two later he went home and called a physician. His condition grew gradually worse, until he was taken to a hospital and operated on for appendicitis. His death was caused by septic peritonitis. The autopsy revealed a gangrenous condition of the appendix. Two enteroliths or concretions of stony formation composed of hard-

---

[1] See per curiam order on page 517.

ened fœcal matter, were found to be where the appendix was ruptured.

It appeared that plaintiff had consulted a physician once or twice somewhat more than a year previous to his death. The physician found some tenderness over the region of the appendix on pressure, and some soreness, and that he was suffering from a mild case of appendicitis, catarrhal in nature. The physician prescribed a laxative, and never heard him complain after that.

The trial court charged: "If you find that Ludwig had at some previous time suffered from an attack of appendicitis, and he had fully recovered therefrom, so that immediately before the external accidental injury at the ball game, if you find that there was such an injury received by him, there was then no appendicitis present, but because of such previous attacks Ludwig was more susceptible to the disease, and such an injury started it, there may be a recovery, although the external accidental injury would not have produced the appendicitis, if the appendix had never been previously impaired by disease. In other words, if Mr. Ludwig recovered from his former attack of appendicitis, if he had it, so that such disease no longer existed in his body, and there was only a susceptibility to have it in case a proper exciting cause should arise, and in this fall on the cement slab on the base is by you found by a fair preponderance of the evidence to be such exciting cause, and to be an external, violent, and accidental injury, the amount of the policy would become payable, upon proper notice and proof being made. But if, because of the former attack there was not merely a susceptibility to a further attack, but the actual disease itself existed, liable to be rendered active and virulent by an injury such as that suffered by Mr. Ludwig, in that event the active disease which resulted in death would not be regarded as the result of the fall alone, but as joint result of the fall and the latent disease, and there can be no recovery."

On the subject of proximate cause the courts have been much at sea. Defendant has referred us to a number of cases. National M. A. Assn. v. Shryock, 73 Fed. 774, 20 C. C. A. 3; U. S. Mutual Accident Assn. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. ed. 60; Western Commercial T. Assn. v. Smith, 85 Fed. 401, 29 C. C. A. 223, 40

L.R.A. 653; National Assn. of Ry. P. Clerks v. Scott, 155 Fed. 92, 83 C. C. A. 652; Commercial T. M. A. Assn. v. Fulton, 79 Fed. 423, 24 C. C. A. 654; Hubbard v. Travelers Ins. Co. (C. C.) 98 Fed. 932; Central v. Rembe, 220 Ill. 151, 77 N. E. 123, 5 L.R.A. (N.S.) 933, 110 Am. St. 235; Binder v. National, 127 Iowa, 25, 102 N. W. 190. See the case of New A. Casualty Co. v. Shields, 155 Fed. 54, 85 C. C. A. 122. The policy clause was essentially identical with that in the case at bar. Several years previous to the time of the accident the assured had twice had appendicitis, but apparently recovered. While riding in a buggy he was thrown against the dashboard, striking his abdomen. Five days later he was operated upon for appendicitis, and died a week later. The Circuit Judges (Lurton, Severens, and Richards) approved this instruction of the trial court:

"In this case it is conceded that the disease of appendicitis, with its consequences and complications, caused the death of the insured, but the real question of fact lies farther back, and is whether the fall against the dashboard, acting independently of any other cause, produced this disease. If the insured recovered from his former attacks of this disease, so that it no longer existed in his body, and there was only a susceptibility to have it, in case a proper exciting cause should arise, and in this case the fall against the dashboard proved to be such exciting cause, the case would be one for recovery under the policy; but if, because of the former attacks, there was not merely a susceptibility to a further attack, but the actual disease itself existed, liable to be rendered active and virulent by an injury such as that suffered by the insured, in that event the active disease which resulted in death would not be regarded as the result of the fall alone, but as the joint result of the fall and the latent disease, and hence there could be no recovery under the policy."

This case and its reasoning meets our approval, and resolves this controversy in accordance with the ruling of the trial court.

2. Some doubt surrounds the question whether Ludwig's death resulted from bodily injury effected solely through accidental means. Defendant aptly urges: "The word 'accident,' in accident policies, means an event which takes place without one's foresight or expecta-

tion. A result, though unexpected, is not an accident. The means or cause must be accidental." Thus in the following cases the injury sustained, although unforeseen, was held not to have been accidental, but to have been the result of means voluntarily employed.

In Schmid v. Indiana, 42 Ind. App. 483, 85 N. E. 1032, the assured did not expect that the exertion incident to carrying his luggage from the railway station to the hotel, in a rarified atmosphere, would result in paralysis of the heart. In Fidelity & Casualty Co. v. Stacey's Executors, 143 Fed. 271, 74 C. C. A. 409, 5 L.R.A.(N.S.) 657, the assured did not expect or foresee that striking a man in the face would produce an injury to his hand, developing into blood poisoning; or that in reaching over a chair and attempting to close the shutters (there being no slip of the foot) he would rupture an artery (Feder v. Iowa, 107 Iowa, 538, 78 N. W. 252, 43 L.R.A. 693, 70 Am. St. 212); or that in jumping from the cars, or in running to see if they were coming, he would rupture his groin (Southard v. Railway P. A. Co., Fed. Cas. No. 13,182); or that in attempting to remove his nightshirt over his head he would burst a blood vessel (Smouse v. Iowa, 118 Iowa, 436, 92 N. W. 53); or that in putting a drunken man off the premises he would injure his heart (In re Scarr, 1 K. B. [1905] 387, 1 Am. & Eng. An. Cas. 787); or that, owing to the exertion incident to assisting in carrying a heavy door, he would drop dead from heart rupture (Shanberg v. Fidelity & Casualty Co. [C. C.] 143 Fed. 651). For a clear statement of the rule, see Richards, Law of Insurance, § 385.

Defendant urges that there was no evidence whatever to show whether the death in this case was the consequence of the injury Ludwig received when he threw himself to the ground, or whether it was received when he encountered the paving stone base, that only by assuming that the bruise was received at the time of coming in contact with the base, and further assuming that Mr. Ludwig did not contemplate that his speed might carry him over and upon the base, can it be said that there was anything upon which the jury might decide, under proper instructions as to the law of the case, whether Mr. Ludwig did not in fact contemplate that he might possibly land on the top of the base. So far as the second of these assumptions is con-

cerned, defendant's own brief contains this admission: "Counsel state that a ball player will slide to a base with no thought of injury. That is doubtless true. A man who had in his mind the fear or thought of possible injury while engaged in making a play or move usual and incident to any game of sport would soon find himself relegated to the bleachers."

On the record before us there was evidence enough on this point to carry the case to the jury.

A much closer question is presented by the record as to whether or not there was evidence sufficient to submit to the jury the question whether the bruise was received when Ludwig came in contact with the stone base. We have concluded, however, that there was enough to justify the submission of the question to the jury. More specifically there was no question that the slide was made, and that Ludwig was hurt at some point after he made the initial movement to slide and before getting up from the base. There was evidence that it was not necessary to do more than to touch the base with the hand. The decedent slid onto the cement block, and his abdomen went across it. A few days afterwards doctors found evidence of injuries— bruises and discoloration—upon his abdomen. In view of the fact that there was no evidence suggesting any other obstruction than this stone slab, it was for the jury to determine whether the external marks on the abdomen of the kind testified to were caused by the rough stone slab. The jury might properly have considered that the soft, dusty road over which the slide was made would not have produced such marks.

In this view the case at bar quite closely resembles, although it is not identical with, U. S. Mutual Accident Assn. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. ed. 60. There the decedent was standing on a platform raised a few feet above the ground. He voluntarily jumped from the platform. In alighting, he struck the ground in such a way as to produce a severe jar, whereby a rupture of the duodenum was caused, from the effects of which plaintiff died. It was held that the cause of death was accidental. Blatchford, J., said: "It must be presumed, not only that the deceased intended to alight safely, but

thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance;' unexpectedly taking place; not according to the usual course of things; or not as expected; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted through accidental means." And see Western Commercial Travelers' Assn. v. Smith, 85 Fed. 401, 29 C. C. A. 223, 40 L.R.A. 653.

The remaining question in this connection is whether the charge of the trial court on this point constituted reversible error. The court charged: "If, as to the person injured, the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight, or was a casualty or mishap not intended to befall him, then the occurrence would be accidental, and the injury one inflicted by accidental means." This, defendant says, was inaccurate and incorrect, but would have been made proper if the court had inserted the words "produced by something," so that the sentence would read: "If, as to the person injured, the injury was produced by something unforeseen, unexpected," etc. Obviously the charge actually given was not strictly accurate or correct. It was verbally wrong. The question then before us is whether it was so far verbally wrong that the defendant can avail itself of the verbal error by taking advantage of it at this stage of the proceedings. We have concluded that this failure to employ with strict accuracy all the words that were to make a complete and precise statement fell within the rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

PER CURIAM:

For the reasons given in the foregoing opinion, prepared by the late Justice JAGGARD, in accordance with the conclusions arrived at by the court, the order appealed from is affirmed.

SIMPSON, J., took no part.