[S. F. No. 7984. In Bank.—February 28, 1919.]

## MARY B. CLARKE, Respondent, v. NEW AMSTERDAM CASUALTY COMPANY (a Corporation), Appellant.

[1] ACCIDENT INSURANCE—DEATH OF INSURED FROM DISEASE—POLICY —ESSENTIAL TO RECOVERY.—Under a policy of accident insurance providing for payment for loss of life from bodily injuries, which independently of all other causes are effected solely and exclusively by accidental means, and providing that the company shall not be liable for any loss caused or contributed to by illness or disease, if disease plays a part in the death of the insured after an accident, it is essential to recovery that such disease was due to the accident.

[2] ID.—DEATH FROM HEART DISEASE — RECOVERY. — Under such a policy, if the death of the insured was in part caused by heart disease, and such disease was not in fact caused by the accident, there could be no recovery.

[3] ID.—PROXIMATE CAUSE OF DEATH—SUFFICIENCY OF EVIDENCE.—In an action to recover on such a policy, where it appeared that the insured was struck by an automobile and suffered a severe concussion of the brain, and that heart disease and appendicitis developed, from the former of which he died, a finding that the proximate cause of death was concussion of the brain is sufficiently sustained.

[4] ID.—EXISTENCE OF UNKNOWN CONDITIONS—POLICY NOT NULLIFIED. The existence of unknown conditions tending to shorten the life of the insured does not nullify a policy.

[5] ID.—CAUSE OF DEATH—QUESTION FOR JURY.—The cause of death is a question for the jury, and where there is sufficient testimony in the record to support the conclusion reached by the jury, the verdict and judgment based thereon will not be disturbed.

[6] ID.—JUDGMENT—EVIDENCE—APPEAL.—Where real and substantial evidence in a case supports a verdict, the judgment will not be set aside on the ground that it was not justified by the proofs.

[7] ID.—CONSTRUCTION OF DOUBTFUL PROVISIONS OF CONTRACT — INSTRUCTION.—In an action on such a policy, an instruction that the jury might, in case of doubt in respect to the application, exceptions to, or limitations to liability, adopt the construction most favorable to the plaintiff, was not erroneous, as thereby giving the jury to understand that if they were in doubt regarding what decision to render in the case, they should find a verdict for the plaintiff, the court elsewhere charging that plaintiff must establish her case by a preponderance of the evidence.

[8] ID.—PROXIMATE CAUSE OF DEATH—BELIEF FROM FACTS—INSTRUC-
TION.—In such action, an instruction that if the jury found "or
believed" certain facts, as to the proximate cause of death, a ver-
dict for the plaintiff would be justified, was not erroneous.

[9] ID.—DEFEAT OF CLAIM — DEATH FROM INDEPENDENT CAUSE — IN-
STRUCTION.—In such action, an instruction that in order to defeat
the claim, the diseased condition of the heart or appendix must
have existed in the body of the insured at the time of the accident,
was not misleading, where the instruction occurred in the course of
a long instruction to the effect that if the diseased condition exist-
ing at the time of the operation or autopsy was not concurrent with
the injury, or existing prior thereto, and was a natural result of
the injury, and that the resulting death was solely due to the bodily
injuries, and not to any independent cause, the verdict must be for
the plaintiff.

APPEAL from a judgment of the Superior Court of Santa
Clara County.  P. B. Gosbey, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Lilienthal, McKinstry & Raymond, B. A. Herrington, H. G.
Hill and Redman & Alexander for Appellant.

H. A. Blanchard for Respondent.

Gavin McNab, Nat Schmulowitz, and Holland, Rutledge &
Lashly, *Amici Curiae.*

MELVIN, J.—Defendant appeals from a judgment in favor
of plaintiff after a trial by jury.  Plaintiff, who is the widow
of James T. Clarke, deceased, sued as beneficiary named in an
accident policy issued to her husband.

The policy in question provided for the payment to plain-
tiff of seven thousand five hundred dollars for "loss of life
. . . from bodily injuries, . . . which independently of all
other causes are effected solely and exclusively by accidental
means, . . . Nor shall the company be liable for any loss
caused or contributed to by illness or disease."

Mr. Clarke was struck by an automobile while he was cross-
ing a street in San Jose, was knocked to the pavement and
suffered a severe concussion of the brain.  The date of the
accident was December 10, 1914.  Mr. Clarke was confined to
his bed, either in the hospital or at home, for a little more

than a week.    After that he was up for a few hours each day and later was able to go into his garden and even to take walks of several blocks.    On the Sunday before he died he complained of a pain in his side and on the following Wednesday, January 13, 1915, an operation was performed upon him and the appendix was removed.    It was one of those not infrequent cases in which nature had walled off and localized the pus and there was no apparently serious general infection. On January 16, 1915, Mr. Clarke died, the immediate cause of his death being acute myocarditis, a disease of the heart. Prior to the accident he had been a man of robust health and had exhibited no symptoms either of heart disease or of appendicitis.    Immediately after the accident Dr. Van Dalsem examined him, using a stethoscope, but found no indication of heart trouble, but just before the operation a slight heart murmur became evident.    This indicated a leak of the tricuspid valve.    The autopsy revealed a heart of more than normal size.    The valves were thickened and covered with a calcareous deposit which, according to the experts, would account for the murmur noticed just before the operation.

There was testimony to the effect that Mr. Clarke was struck across the stomach by the fender of the automobile and was thrown so that his head struck the pavement.    There was upon his head when he was first examined by Dr. Van Dalsem a contusion two and one-half or three inches in diameter. There was a concussion of the brain which caused unconsciousness for five or six hours, and for several days thereafter he was so disturbed mentally that he was unable to understand his surroundings or his condition.

[1]    The court instructed the jury that if disease plays a part in the death of an assured person after an accident, it is essential to recovery that such disease was due to the accident.    (*New Amsterdam Casualty Co.* v. *Shields*, 155 Fed. 54, [85 C. C. A. 122].)    The jurors were also given the following instructions:

[2]    "Under the terms of this policy plaintiff cannot recover for the death of James T. Clarke, unless that death was caused by accidental means, and solely and exclusively by such means, independently of other causes. . . . If you shall find that the death was caused in part by the heart disease, and that this heart disease was not in fact caused by this accident, your verdict must be for the defendant. . . . If you shall be

in doubt whether this accident caused either appendicitis or the heart disease your verdict must be for the defendant.''

These instructions substantially stated the rule governing such cases, and, therefore, the problem before us is whether or not there is substantial evidence to support the verdict in view of the court's charge.

It appears from abundant and uncontradicted testimony that Mr. Clarke was a man of extraordinary health and bodily vigor for a man of his years. Just before the operation a slight leak of the tricuspid valve was discovered, but, according to the testimony of his physician, the heart was then functionally normal and was propelling the blood throughout the body. The autopsy revealed no abnormal condition of the lungs or liver indicative of any chronic heart condition. Dr. Van Dalsem testified, regarding the myocarditis, as follows: ''In my opinion this acute myocarditis was due to the appendicial abscess aided by the lowered resistance caused by the concussion of the brain. That is the way of poisons gathered up from the appendicial abscess and carried through the heart.'' Regarding the infection resulting in the appendicitis, one of the physicians, Dr. Blanchard, testified that in his opinion the accident so lowered Mr. Clarke's vitality and put him in such a physical condition, with reference to resistance, that he became a prey to the malady to which otherwise he would have been immune—that the appendix would not have been infected from the bacilli in the larger intestine had it not been for the accident. [3] There was other evidence regarding these matters, but the above synopsis sufficiently illustrates the theory of respondent, and the substantial support to that theory upon which the jury was justified, in our opinion, in reaching the conclusion that the concussion of the brain, due to the accident, was the proximate cause of Mr. Clarke's death.

Great stress is laid by defendant's counsel upon the fact that at the post-mortem examination the heart showed lime deposits. One of the defendant's expert witnesses, a physician, testified that ''the lime deposits in the heart were due to arterial sclerosis, which is frequently due to old age.'' But there was no showing that this condition was pathological or that it was even unusual in a man of the age of the assured. Naturally, a man of sixty or more would have less power to resist evil consequences resulting from an accident than a

younger person would possess, but an insurer accepting as premiums the money of a client of advanced years may not complain of that fact. [4] It has been held that the existence of unknown conditions tending to shorten the life of the assured does not nullify a policy. (*Stanyan* v. *Security Mutual Life Ins. Co.*, 91 Vt. 83, [L. R. A. 1917C, 350, 99 Atl. 417]; *Freeman* v. *Mercantile Mutual Acc. Assn.*, 156 Mass. 351, [17 L. R. A. 753, 30 N. E. 1013].) It may be conceded that morbid conditions induced by bodily injury may be more readily caused and more deadly in result when the victim is an aged person than in the case of a healthy youth, but that concession would not excuse the insurer of the maturer individual. If the accidental injury produces morbid change in the exercise of vital functions, which in turn results in death, the injury and not the morbid change is held to be the cause of death. (*Ward* v. *Aetna Life Ins. Co.*, 82 Neb. 499, [118 N. W. 70]; *New Amsterdam Casualty Co.* v. *Shields*, 155 Fed. 54, [85 C. C. A. 122]; *Ludwig* v. *Preferred Accident Ins. Co. of New York*, 113 Minn. 510, [130 N. W. 5].)

[5] The cause of death is a question for the jury and where, as here, there is sufficient testimony in the record to support the conclusion reached by the jury, the verdict and judgment based thereon will not be disturbed. (*Hanley* v. *Fidelity & Casualty Co.*, 180 Iowa, 805, [161 N. W. 114]; *Hatfield* v. *Iowa State Traveling Men's Assn.*, 180 Iowa, 39, [161 N. W. 123]; *Semmons* v. *National Travelers' Benefit Assn.*, 180 Iowa, 666, [163 N. W. 338].)

Defendant's counsel cite many authorities, of which *Maryland Casualty Co.* v. *Morrow*, 213 Fed. 599, [52 L. R. A. (N. S.) 1213, 130 C. C. A. 179], is typical. In that case the jurors were told, in effect, that although death might have resulted from two concurring causes—one being the injury and the other being pre-existing diabetes—the plaintiff would, nevertheless, be entitled to recover. This was very properly held to be error. But in the present case the theory of the plaintiff, supported by testimony which the jurors were entitled to accept, was that no heart disease existed before the accident and that both the appendicitis and the myocarditis were results of the injury itself. In *Bellows* v. *Travelers' Ins. Co.* (Mo.), 203 S. W. 978, the court was considering the case of a man who had been severely beaten about the head and body by robbers. He recovered from the external wounds,

but the internal results progressed from stage to stage until, according to certain testimony, death resulted from them. The immediate cause of death was nephritis (inflammation of the kidneys), occurring nine months after the accident, but the court held that from the evidence the jurors were justified in deciding that death resulted directly and independently of all other causes from the injury.

[6]   Where real and substantial evidence in a case supports a verdict, the judgment will not be set aside on the ground that it was not justified by the proofs.  (*Marks* v. *Reissinger*, 35 Cal. App. 44, [169 Pac. 243].)

The instructions were unusually full and fair and it would serve no good purpose to review all of those to which appellant's counsel call our attention.  Some of them, however, require notice.  The twenty-eighth instruction was as follows: "When a doubt arises in respect to the application, exceptions to, or limitations to liability, you will adopt the construction most favorable to the plaintiff."

It is not contended that the rule announced is not a correct one for the guidance of a court, nor could such contention well be sustained, because this court and, generally speaking, all American courts, have declared in favor of that principle of construction of contracts which are at all doubtful in the matter of the exact meaning of the language employed. (1 Corpus Juris, 415; *Bayley* v. *Employers' Liability Assur. Corp.*, 125 Cal. 345, [58 Pac. 7].)  But appellant's counsel complain that by giving this instruction, applicable, if at all, to issues of construction to be determined alone by the court, the jurors must have understood the court to say that if they were in doubt regarding what decision to render in the case, they should find a verdict for the plaintiff.  [7]   We cannot see that jurors would be so misled, nor can we agree with counsel for appellant regarding the alleged harmful result of the giving of this instruction.  Elsewhere in the charge the jury had been told by the court that "plaintiff must establish her case by a preponderance of the evidence."  We may not assume that the jurors disregarded this rule, nor that they were misled by the statement of a canon of construction of insurance contracts, which is, undoubtedly, one recognized by the courts.

The twenty-sixth instruction began with the words, "If you find from all the facts and circumstances," and these words

CLXXX Cal.—6

are followed by a recital of the details of the accident, the contusion and the shock to his nerves, which Mr. Clarke experienced. Then occur the words, "and if you find *or believe*" (the italics are ours), followed by a recital of respondent's theory of the proximate cause of death, which they were told, if believed by them, would justify a verdict for plaintiff. Appellant's counsel insist that this instruction is prejudicially erroneous, citing in that behalf *Fries* v. *American Lead Pencil Co.*, 141 Cal. 610, [75 Pac. 164]. That authority does not sustain the contention. It is true that in the Fries case an instruction was condemned which began with the words, "if in this case you believe from the evidence," etc., but the error lay not in the use of the word "believe," but in the statement to the jurors that they could award such damages as they might "feel" the child entitled to receive. This gave the jurors, as the court held, a right to allow "play to their emotions of sympathy for the injured child." [8] It is clear that the instruction there held erroneous is not at all similar to the one here criticised.

It is further asserted that the court committed radical error by instructing the jury that in order to defeat the claim the diseased condition of the heart or appendix "must have existed in the body of James T. Clarke at the time of the accident." This statement, wrenched from its context, would of course be an erroneous one, but it occurs in the course of a long instruction to the effect that if the diseased condition existing at the time of the operation or autopsy was "not concurrent with the injury, or existing prior thereto," and was "a natural result of the injury, and that the resulting death was solely due to the bodily injuries, and not to any independent cause," the verdict must be for the plaintiff. The part of the instruction to which objection is made was followed by this sentence: "If you believe from the evidence that the acute suppurative appendicitis and the valvular heart disease, with hypertrophy of the heart, was brought about by the weakened condition of the body of James T. Clarke, as the result of said injuries, and not from some condition existing at the time or prior to the injury on December 10, 1914, then your verdict must be in favor of the plaintiff and against the defendant." [9] The instruction was proper by reason of the conflicting claims of the litigants as to the existence or nonexistence of disease prior to the accident. Undoubtedly, death from any

independent cause, whether existing prior to or supervening at a time subsequent to the accident, would defeat the claim of plaintiff, but the instruction was dealing with one phase of the problem, namely, the existence or nonexistence of disease prior to the accident. Nevertheless, the jurors were told that death from "any independent cause" would prevent recovery. Therefore, we are of the opinion that the jurors were not misled by the instruction. An instruction somewhat similar was approved in *New Amsterdam Casualty Co.* v. *Shields,* 155 Fed. 54, [85 C. C. A. 122].

No other alleged errors in the giving or refusing of instructions require further comment than that we are of the opinion that the very exhaustive charge was fair and free from substantial error.

The judgment is affirmed.

Sloss, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

Melvin, J., Olney, J., Shaw, J., and Angellotti, C. J., concurred.