MARY DELANEY v. MODERN ACCIDENT CLUB, Appellants. ·

**Accident Insurance:** MIS-STATEMENT IN APPLICATION. A mis-statement in an application for membership in a fraternal accident association that the assured was a member of another fraternal order, a condition precedent to membership in the insurance association, is immaterial, where it appears that the agent taking the application and the assured were fully advised of the facts and the fraternity was not misled.

**Accident Insurance:** VALIDITY OF CERTIFICATE: CONDITION PRE-CEDENT: AUTHORITY OF AGENT. The articles of a fraternal insurance association provided as a condition precedent to membership therein that the applicant must be a member of another order in good standing. An agent of defendant accepted plaintiff's application, knowing that this condition had not then been performed, but the same was subsequently done in accordance with their understandng and defendant's certificate of membership issued. *Held*, that the transaction amounted to an agreement that defendant's certificate should be in force upon compliance with the condition precedent; that the agent had authority to make the same and the defense that defendant's certificate was void from the beginning was without merit.

Accidental Injury Defined.   Where death results from . disease
3   which follows as a natural though not necessary consequence
of a physical injury which is accidental, it is deemed the
proximate result of the injury and not of the disease, and
within the requirements of a policy that death must result
solely from accidental injury.

*Appeal from Iowa District Court.*—HON. M. J. WADE, Judge.

SATURDAY, OCTOBER 24, 1903.

ACTION in equity against the defendant, a mutual benefit association organized under the laws of Iowa, to compel an assessment on account of the accidental death of George L. Delaney, a member of said association, holding a certificate in which plaintiff is named as beneficiary, and to require the payment of the proceeds of such assessment, not exceeding the sum of $1,000, to plaintiff, under the provisions of the certificate.   The defenses interposed were that the certificate was invalid because George L. Delaney was not a member of the Modern Woodmen of America at the time the certificate was issued to him— such being the requirement of the articles of incorporation of the defendant association—and also that the death was not the result of an accident, within the terms of the certificate.   A decree was rendered for plaintiff, and defendant appeals.—*Affirmed.*

*Remley & Ney* and *Hart & Zmundt* for appellant.

*Thomas Stapleton* and *J. M. Dower* for appellee.

McCLAIN, J.—The defense that the certificate was void when issued is predicated on the fact that it is provided in the articles of incorporation of defendant association that "no person shall be eligible to membership in this association   *   *   *   who is not at the time of receiving his certificate of membership a member in good

VOL. 121 IOWA.—34.

standing of the Modern Woodmen of America, a fraternal organization organized under the laws of the state of Illinois"; that by the certificate of membership in defendant association it is provided that compliance by George L. Delaney with the laws, rules, and requirements of the defendant association and of the Modern Woodmen of America is made an express condition of the contract, and that George L. Delaney, in his application, represented that he was a member of the Modern Woodmen of America and the Parnell Camp thereof; and that this representation was false. It appears, however, without controversy, that one Burke, the agent of the defendant association,

1. ACCIDENT insurance: misstatement in application. solicited Delaney and others in the town of Parnell to join the defendant association, and when the objection was raised by them that they were not eligible to membership, not being Modern Woodmen, he assured them that they might become members of the Modern Woodmen, and when they did so their certificates of membership in the defendant association would be valid. It further appears that, with this understanding, Delaney signed the application for membership, which contained the recital that he was a member of the Modern Woodmen, and that he was admitted to membership in the Parnell Camp of the Modern Woodmen a week after the date of his certificate of membership. His death occurred several months after the date of his certificate, and while he was a member in good standing of the Modern Woodmen. The mis-statement in the application that Delaney was at the time a member of the Modern Woodmen was immaterial, for Burke, the agent of defendant taking the application, was fully advised as to the facts, and the company was not, therefore, misled or imposed upon. Nor can it be urged that Delaney was not entitled to be a member of the defendant association at the time of his death, for at that time he **was a member** of the Modern Woodmen.

But the real question is whether the certificate was void from the beginning, on the ground that, at the time it was issued, Delaney was not such a person as could, under the articles of the association, be a member.   It may be conceded that, by the terms of the certificate, Delaney was bound to take notice of the provisions of the articles, and that these terms could not be waived by the officers and agents of the association so as to entitle one to the benefits of a certificate in the association without his being a member of the Modern Woodmen.   It may be that if, after Delaney became a member of the Modern Woodmen, the defendant association had received dues from him on account of his certificate of membership, the defendant would be estopped from objecting that he was not eligible to membership when the certificate was issued to him, but we find no evidence of the subsequent payment of any dues to defendant.   We think, however, that the defense relating to the validity of the contract can be disposed of on a single proposition.

The burden is on the defendant, in order to defeat recovery on the certificate on account of breach of condition, to show that a condition of the contract was broken; that is, specifically, that, at the time Delaney 2. VALIDITY of received his certificate of membership in the certificate: condition pre- defendant association, he was not a member cedent: authority of of the Modern Woodmen.   Burke, as de- agent. fendant's agent, had undoubtedly authority to contract that a certificate should be issued to Delaney when he became a member of the Modern Woodmen; and although, as a matter of fact, the application was taken before Delaney was such member, if, after the condition was complied with, the certificate was actually delivered, the defendant should not object that its officers did not know at the time the certificate was so delivered that, at the time the application was made, Delaney was not eligible to membership, for the knowledge of that prelim-

inary fact was imputed to it by reason of the knowledge of its agent. For instance, if the condition had been that no certificate should issue to a person under eighteen years of age, and an application had been made by one who was not yet of that age, that fact being known to the agent, but the certificate was not delivered until after such person had attained the required age, then it could not be contended that want of knowledge on the part of the officers issuing the certificate that the applicant was not of age when the application was made—that fact having been known to the agent—would render the certificate invalid. Now, it does not appear when the certificate was actually delivered to and accepted by Delaney; but, even assuming that this delivery and acceptance antedated his admission to the Modern Woodmen, nevertheless the practical effect of the arrangement of the agent was that the acceptance of the certificate should become effectual to render the contract binding when Delaney should be admitted to membership in the Modern Woodmen, and we think that the power to make this arrangement was within the general scope of the authority of Burke as agent for the defendant authorized to act in securing applications for membership in the defendant association. Indeed, we should feel no hesitation, were it necessary, in holding that the practical construction put by the defendant association upon its own articles in framing its contract of membership was that membership in the Modern Woodmen was a condition to the right of recovery under the certificate, for in the certificate it is said that Delaney, "a member of the Modern Woodmen of America, * * * is entitled to all the rights and privileges of the Modern Accident Club, as hereinafter provided," and that "this certificate is issued upon the express condition that the said George L. Delaney shall in every particular, while a member of said Club, comply with the laws, rules and requirements thereof and of the Modern Woodmen of

America." And on the back of the certificate is the indorsement, "No one admitted but members of the Modern Woodmen of America in good standing." It seems to us, therefore, that there is no merit in this defense.

It is further contended, however, that under the certificate there is no right of recovery, because the death of Delaney was not within the terms of the contract. To bring the case within the terms of the contract, the death of Delaney must result "solely from accidental injuries." The undisputed facts are that, in a friendly scuffle between Delaney and one Dwire, Delaney received a slight cut on his little finger from the point of a steel eraser which stuck out of the top of Dwire's vest pocket; that inflamation of the finger followed this cut, whch developed into erysipelas and blood poisoning, causing Delaney's death; and the question argued is whether the death was solely due to the cut on the finger, or whether it was due to erysipelas and the consequent blood poisoning, as an independent cause. Phyicians testified that the cause of Delaney's death was blood poisoning, due to specific bacilli introduced in some way into the blood in Delaney's hand; and counsel concede that, if the bacilli were thus introduced by the point of the eraser at the time the cut was received, then defendant would be liable. Their contention is that the bacilli causing the diseased condition of the hand, and the subsequent death, may have been and probably were, introduced into the blood of the hand through the cut, but after it was received; and they depend on evidence of the physicians to the effect that the bacilli causing the result known as "blood poisoning" may easily be introduced and are often introduced into the blood through such a wound from a great variety of possible sources, such as washing the wound with contaminated water, or the bandaging of it with contaminated bandages, or in other like methods. It seems to us, however, that it is wholly immaterial when

*3. ACCIDENTAL injury defined.*

or how the specific bacilli which caused the disease known as "blood poisoning," which resulted in the death of Delaney, were introduced into the wound, whether at the time it was inflicted or subsequently. Blood poisoning is a disease, just as many other pathological conditions of the human system, resulting from the introduction therein of other specific bacilli, are diseases. It occurs to us that it is, indeed, wholly immaterial whether the pathological condition which resulted in death was due to bacilli or not. The simple question is whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous. Even though the wound results in disease and death through the negligence of the injured person in failing to take ordinary and reasonable precautions to avoid the possible consequences, the death is the result of the wound. There is really no conflict in the authorities on this question, and it is only necessary to cite a few pertinent cases.

In *Omberg v. United States Mut. Acc. Ass'n*, 101 Ky. 303 (40 S. W. Rep. 909, 72 Am. St. Rep. 413), which was an action to recover under an accident policy for death resulting from blood poisoning, following the bite of an insect, it was held that the death was within the terms of the policy, caused through "extraordinary, violent, and accidental means," and that it was not within an exception in the policy excluding liability for the result "of poisoning in any form or manner," or "contact with poisonous substances"; and the court says that, but for the bite, "the blood poisoning and death would not have

resulted.   The blood poisoning was consequent on the wound.   The bite would therefore be the proximate cause of death."   In *Freeman v. Mercantile Mut. Ass'n*, 156 Mass. 351 (30 N. E. Rep. 1013, 17 L. R. A. 753), it was held that death resulting from an accidental fall, causing peritonitis, was within the terms of an accident policy; and the court makes use of this pertinent language: "The defendant contends that it is not liable in case of a death from disease, even if the disease is caused by an accident. The principal question in the case is, what kind of cause is to be deemed 'proximate,' within the meaning of the policy?   Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause; and, in dealing with such cases, the maxim, '*Causa proxima non remota spectatur*', is applied.   But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause.   It means that the law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions.   The law does not consider the cause of causes, beyond seeking the efficient, predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect.   An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different, and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immeditely interrups the vital processes." In *Martin v. Equitable Acc. Ass'n*, 61 Hun. 467 (16 N. Y. Supp. 279), it was held that death from blood poisoning,

following an injury to a finger, was within the language of an accident policy providing for liability for death "through external, violent, and accidental means"; and the court says: "The evidence showed that the death was produced by blood poisoning, and that this was occasioned by the inoculation into the wound of some poisonous substance at or very soon after the wound was made. If the inoculation occurred at the time the wound was made, so that it was, in fact, a part of the accident, I see no good reason why the death might not be attributed to, the accident, as the sole and proximate cause, although blood poisoning ensued." In *Bacon v. United States Mut. Acc. Ass'n,* 123 N. Y. 304 (25 N. E. Rep. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748), an accident insurance company was held not liable for death resulting from malignant pustule, which it appeared might be the result of an infection by a certain form of bacilli, resulting from mere contact with poisonous animal matter, without any antecedent or concurrent wound; the reason assigned for the conclusion being that the cause of death was disease, and not accident. The opinion of the majority of the court, rendered by Peckham, J., contains, however, the following pertinent language: "The insurance in this case was against bodily injuries effected through external, violent, and accidental means. It was not to extend 'to any death or disability which may have been caused wholly or in part by bodily infirmities, or disease existing prior or subsequent to the date' of the policy, 'nor to any case except where the injury is the proximate or sole cause of the disability or death.' There cannot be the slightest doubt that malignant pustule is regarded generally, by those who have but the usual acquaintance with such matters, as a disease. Every particle of testimony given by the doctors called by the plaintiff shows clearly to my mind that it is so regarded generally in the medical world, and that it is only when these doctors are asked to define the

case in a manner to suit their refined notions of scientific and artistic accuracy that they define the trouble as a 'pathological condition of the body,' in the one case, 'succumbing to infliction of this particular poison,' and in the other, 'following this particular inroad of this particular kind of bacilli.' The difference between the cause of this condition and the causes of typhoid fever, tuberculosis, smallpox, scarlet fever, and such like diseases, is that this particular condition is caused by different bacilli from the others, and they come in contact with the skin, or enter into its pores, while in the other cases they are generally breathed in." O'Brien, J., in a dissenting opinion, contends that there was evidence from which the jury might have found that in some way the bacilli anthrax which produced the fatal disease were implanted upon the face of the deceased where the sore appeared, and that, if the death did result from such accidental infliction of the animal virus upon the person, whether by handling the same or by reason of its being deposited by insects or otherwise, the death was due to an injury effected through external, violent, and accidental means, within the language of the policy. There can be no doubt whatever, from the reasoning of the majority opinion, that if the deceased would not have been inoculated with the poison, except in consequence of a wound due to accident, the judges would have concurred in holding that the death was accidental, and not the result of the disease.

In *International Benefit Ass'n. v. Grauman*, 107 Ind. 289 (7 N. E. Rep. 233), it was held that death from apoplexy, caused by physical injuries of which there was visible external sign, was within the terms of a policy covering "bodily injuries, effected through external, violent, and accidental means, which had occasioned" death. The appeal was from the ruling of the trial court, holding the allegations of the complaint sufficient on demurrer, and the court say: "The averments leave no room to doubt that death

resulted from bodily injury, and not in consequence of disease. The fall and injury upon the head may have resulted in apoplexy. That the injury resulting from the fall produced a condition, aptly designated by that name, did not render it any less the cause of death. *Terre Haute, etc., R. Co. v. Buck*, 96 Ind. 346 (49 Am. Rep. 168). Conceding all that is said in respect to the necessity of showing, as a condition precedent to a right of recovery, that death was not the result of disease, we are nevertheless constrained to hold, since the particular facts are averred which show the physical injuries sustained by the assured and that death resulted therefrom, that the idea is thereby effectually excluded that death could have resulted in consequence of disease. The demurrer to the complaint was properly overruled." In *Isitt v. Railway Passengers Assurance Company*, 22 Q. B. D. 504, it was held that death from pneumonia, resulting from a cold caught by deceased while suffering from debility due to an accident, was within the terms of a policy covering liability for any injury caused by accident; and the conclusion of the judges is substantially stated in the opinion of one of them, as follows: "More shortly, the assured fell and dislocated his shoulder. He was, in consequence, confined to his room. He there suffered pain, became restless and unable to wear his clothes, and was reduced to a condition of debility. He thus became unusually susceptible to cold; he caught cold, and, in consequence, pneumonia; and he died of pneumonia. These facts appear to me to constitute a chain of circumstances leading naturally from the injury to the death. The question of law, is, then, whether or not, as a matter of law, the chain of circumstances ought to be taken into consideration as 'effects,' under this insurance. Construing, as I do, the terms of the insurance as meaning that the injury must be immediately caused by the accident, but that death need not be immediately caused by the injury, I answer this'

question in the affirmative.   I think the circumstances which followed were, in contemplation of law, 'effects' of the injury.   I am therefore of opinion that the assured died 'from the effects of the injury,' within the meaning of the policy, and that the plaintiffs are entitled to recover the amount of the insurance.''

These cases support, therefore, the general proposition that death resulting from disease, which follows as a natural consequence, though not the necessary consequence, of a physical injury, which is accidental, is an accidental death, within the terms of an accident insurance policy, the death being deemed the proximate result of the injury and not of disease as an independent cause. The reasoning of the court in the case of *Smith v. Accident Ins. Co.*, L. R. 5 Exch. 302, supports the same conclusion, although in that case it was held that the death, which was from erysipelas following an accidental cut on the foot of the deceased, was not within the terms of the policy, by reason of an express provision that the insurance did not cover "death resulting from rheumatism, gout, herania, erysipelas, or any other disease or secondary cause or causes arising within the system of the insured, before or at the time of, or following, such accidental injury (whether causing such death directly or jointly with such accidental injury)."   But even in that case one of the judges thought that the effect of the condition was only to exempt the company from liability in respect to death from erysipelas where the erysipelas arose within the system, and was collateral to the accident.   Our conclusion is also supported by the reasoning in *Windspear v. Accident Insurance Co.* (C. A.) 6 Q. B. D. 42, and *Lawrence v. Accidental Ins. Co.*, 7 Q. B. D. 216, to the effect that death from drowning, or physical injuries received consequent on unconsciousness and helplessness due to disease, was accidental death.   In those cases, as in the case before us, the proximate cause

of the death was the physical injury. If Delaney, in the case before us, had been suffering from erysipelas, or some other disease, at the time he received the injury on his finger, and it appeared that the wound was more dangerous on that account, or that his previous diseased condition contributed to and augmented the danger from the wound, then, under the cases last cited, it might well be argued that, within the language of the certificate, his death did not "result solely from accidental injuries." On the same point, see *Commercial Travelers' Acc. Ass'n v. Fulton*, 24 C. C. A. 654 (79 Fed. Rep. 423); *National Masonic Acc. Ass'n v. Shryock*, 20 C. C. A. 3 (73 Fed. Rep. 774); *Modern Woodmen Acc. Ass'n v. Shryock*, 54 Neb. 250 (74 N. W. Rep. 607, 39 L. R. A. 826). But in this case the disease was not concurrent with the injury, but was a natural consequence of it, and the death resulting therefrom was therefore solely due to the injury, and not due to any independent cause.

The decree of the lower court is AFFIRMED.