CLARA RATHJEN, APPELLEE, V. WOODMEN ·ACCIDENT ASSO-
CIATION, APPELLANT.

FILED MAY 17, 1913.   No. 17,160.

1. **Appeal: VERDICT: CONFLICTING EVIDENCE.** In an action on a policy of accident insurance, where the question of the cause of the death of the assured is submitted to the jury on conflicting evidence, a reviewing court will not set aside the verdict unless it is shown to be clearly wrong.

2. **———: WITNESSES: OPINION OF EXPERT.** Where the physician and surgeon who treated the assured for his accidental injury has shown himself competent to testify as a medical expert, has fully and clearly described the nature of the injury and its effect, together with the condition and symptoms of his patient, it is not reversible error to permit him to state what, in his opinion, caused the death of the assured.

3. **Instructions** examined, and found to be without reversible error.

APPEAL from the district court for Webster county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Hainer & Craft*, for appellant.

*Bernard McNeny*, contra.

BARNES, J.

Action on a policy of accident insurance issued by the Woodmen Accident Association, a domestic corporation, to Henry J. Rathjen, by which it was provided that, in case of his death "caused directly and exclusively by bodily injury effected by external, violent and accidental means," the association would pay to his beneficiary, Clara Rathjen, the sum of $1,000. A trial in the district court for Webster county resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

It is strenuously contended that the verdict is not sustained by the evidence, in this, that it was not shown that Rathjen's death was caused directly and exclusively by bodily injury effected by accidental means. The record discloses that the assured was a man 33 years of age, 6 feet in height, who weighed about 180 pounds. He was a farmer, and engaged in that occupation on the 27th day of June, 1910, and was apparently in good health. On that day, while working with a team and cultivator in his cornfield, he was accidently struck on this right knee by the iron lever of his cultivator; the knee commenced to swell, and the swelling continued until July 3, when he obtained treatment for his injury from Doctor Cook, who relieved the injured part by removing an effusion of water and serum, and bandaged the patient's leg. Not obtaining satisfactory relief from the treatment of Doctor Cook, the assured, on the 10th day of July, employed Doctor Moranville, who removed the bandage and applied a milder dressing. Doctor Moranville testified that at that time Rathjen had a high temperature or fever; that two days thereafter he became confined to his bed, from which he never arose, and died on the following 12th day of August, 1910.

The foregoing facts are undisputed. It is claimed, however, by the defendant, that Rathjen's death was caused by what is known as "Bright's disease," or to use the words of Doctor Raines, "chronic interstitial nephritis." On this question the evidence was conflicting. Doctor Moranville, a physician of more than 35 years' experience and practice, who appeared from his evidence on both his direct and cross-examination to have been familiar with cases of a like nature, and who treated the assured from about the 10th day of July until death ensued, testified that in his opinion Rathjen's death was the result of blood-poisoning, caused by the injury to his right knee which was sustained by the accident of June 27, 1910. For the defendant, Doctor Raines, who was called to see the patient about the 31st of July, testified, in substance, that in his opinion Rathjen's death was caused by chronic interstitial nephritis, or what is commonly called "Bright's disease." Of the two physicians Doctor Moranville seems to have had the best opportunity to ascertain the cause of Rathjen's death, and, without doubt, the jury were more impressed by his evidence than that given by Doctor Raines. Doctor Cook, who appeared to be a competent and unprejudiced witness, gave testimony, which, to some extent, strengthened the evidence of Doctor Moranville. It is true that Doctor Cook testified that about a year before the accident occurred he treated Rathjen for stomach and kidney trouble, but he also testified that the trouble disappeared as the result of his treatment. Doctor Creighton testified, in answer to a hypothetical question, that the death of Rathjen might be attributed to Bright's disease, while Doctor Cook admitted that Rathjen's death could have arisen from blood-poisoning as a result of his accidental injury. As indicating the real nature of the disease, the testimony shows that at its earliest stages the injured knee was swollen; but it appears from the evidence of the physicians that, if there had been a dropsical condition resulting from Bright's disease, both of the patient's legs would probably have been swollen. The

testimony of Rathjen's father was to the effect that the injured knee was the only one that was swollen, and there was no swelling of the left limb. Like testimony was given by a Mr. McIntyre, a neighbor, who helped to take care of Rathjen during his illness. Rathjen's wife testified, in substance, that he had never had any serious illness, and up to the time of his injury he was in good health and able to pursue his ordinary work.

In *Caldwell v. Iowa State Traveling Men's Ass'n*, 136. N. W. (Ia.) 678, it was said: "Where death results from erysipelas, which follows as a natural, though not as a necessary, consequence of an accidental wound upon the cheek, it may be deemed the proximate result of the wound, and not of the disease, within the requirements of an accident policy, that death must result solely by accidental means."

In *Western Commercial Travelers Ass'n v. Smith*, 85 Fed. 401, 40 L. R. A. 653, Judge Sanborn of the United States court of appeals used the following language: "If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa causans*, to the accident alone." This rule is supported by *Delaney v. Modern Accident Club*, 121 Ia. 528; *Ward v. Ætna Life Ins. Co.*, 82 Neb. 499; *Schumacher v. Great Eastern Casualty & Indemnity Co.*, 197 N. Y. 58, 27 L. R. A. n. s. 480; *Cary v. Preferred Accident Ins. Co.*, 127 Wis. 67, 5 L. R. A. n. s. 928; *Western Travelers Accident Ins. Ass'n v. Munson*, 73 Neb. 858.

In the light of these authorities, and in view of the

testimony, we feel unable to say that the evidence does not support the verdict.

It is strenuously contended that the district court erred in receiving the testimony of Doctor Moranville over the defendant's objection. That objection seems to have been limited to the competency of the witness. It is in the following words: "Objected to by defendant as incompetent, the witness not shown to be competent." As above stated, the testimony of Doctor Moranville settled the question of his competency as an expert witness beyond all question. He was skilfully cross-examined at great length by counsel for the defendant, and acquitted himself in an admirable manner. It was shown that he had been engaged in the active practice of his profession for more than 35 years; that he had had cases of a like nature, and evidently knew the truth of the facts to which he testified. It should also be observed that after having described his treatment of the assured, and all of the conditions and symptoms in the case, including a test of the deceased's urine, he gave his opinion as to what caused Rathjen's death, and, as we view the case, the reception of this testimony was not reversible error.

It is further contended that instruction No. 9 is inconsistent with the instructions given by the court at the request of the defendant. We have examined the instructions, and, as we view them, they are not inconsistent.

After instructing the jury on the defendant's theory of the evidence, the court, by the ninth paragraph of the instructions, gave plaintiff's theory of the case, and concluded as follows: "If, on the other hand, you find from the evidence that the said Henry J. Rathjen received a bodily injury through external, violent and accidental means, and that a disease, commonly known as 'Bright's disease,' or blood-poisoning, resulted and was brought about by the injury, and that said disease so resulting from the injury, if you find it did so result, contributed to or hastened the death of said Henry J. Rathjen, that would not be such a disease or bodily infirmity as would prevent

recovery of the plaintiff .in this case, as defined in these instructions." We think the part of the instruction quoted is in line with the rule laid down in the authorities above cited, and was supported by the testimony of the medical experts.

As we view the record, it contains no reversible error, and the judgment of the district court is

AFFIRMED.

.REESE, C. J., LETTON and SEDGWICK, JJ., concur.

ROSE, FAWCETT and HAMER, JJ., not sitting.