MRS. B. P. BALLAGH, Appellee, v. INTERSTATE BUSINESS MEN'S
ACCIDENT ASSOCIATION, Appellant.

**INSURANCE**: Accident Insurance—Abrasion of Skin—Septicæmia
1    —Intervening Cause. Septicæmia, resulting in death, but set in
motion or caused by an external, violent and accidental abrasion
of the skin, howsoever slight, is not an "intervening cause" within
the meaning of an accident policy providing indemnity for death
"resulting directly *and without intervening cause* from a bodily
injury, . . . . and effected solely by external, violent and
accidental means." The abrasion of the skin remains, in law, as
the direct cause of death.

**INSURANCE**: Accident Insurance—Policy—Construction—"With-
2    out Intervening Cause." Articles of incorporation of an accident
insurance company, and a part of the policy issued, limiting indem-
nity to members dying *"solely* by accidental means," receives no
added meaning by the insertion of the clause, "without intervening
cause."

**INSURANCE**: Accident Insurance—Policy—Construction—"Skin
3    or Outer Covering of Eye." Whether the words "the skin or
outer covering of the eye," appearing in an accident policy, refer
to the skin of the body generally or to the skin or outer covering
of the eye only, *quære*.

**INSURANCE**: Accident Insurance—Proximate Cause—"Death
4    Resulting From Infection"—Non-Applicability of Clause. A
provision of a by-law constituting a part of an accident insurance
policy, which limits liability for death when "resulting from infec-
tion," but which is not pleaded as grounds of affirmative defense,
furnishes no reason for denying liability when the uncontroverted
evidence shows that the sole proximate cause of the death was an
accidental abrasion of the skin resulting in septicæmia.

**PLEADING**: Matters Specially Pleaded—Insurance Clause Limiting
5    Liability. A by-law which, by reference, is made a part of an
accident insurance policy, and which limits the liability of the
company for death "resulting from infection," must be specially
pleaded if expectation is had of relying on it as an affirmative
defense. (Sec. 3629, Code, 1897.)

DEEMER, J., specially concurs.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

SATURDAY, DECEMBER 18, 1915.

REHEARING DENIED FRIDAY, MAY 5, 1916.

ACTION at law upon a policy or certificate of accident insurance. Judgment for plaintiff, and defendant appeals.— *Affirmed.*

*R. M. Haines,* and *Dunshee & Haines,* for appellant.

*Read & Read,* and *Morgan & Korf,* for appellee.

WEAVER, J.—Plaintiff alleges that her husband, now deceased, was, in his lifetime and at the date of his death, a member of the defendant association, which issued to him a benefit certificate of membership, and that, during the remainder of his life, he conformed to all the conditions of such membership, and was in good standing in the association when he died. She further alleges that, by the terms of said certificate, the defendant undertook, upon the death, accidentally occasioned, of a member in good standing, to pay the person properly designated by him for that purpose the proceeds of one assessment of $2 on each member of the association, not exceeding in the aggregate the sum of $5,000. The death of her said husband, she alleges, was the result of bodily injury effected solely by external, violent and accidental means and without intervening cause, and such death occurred within less than six months from the date of the injury, and she further alleges that said association has more than 2,500 members and that a single assessment at $2 each upon the membership will produce more than $5,000. For answer, the defendant admits its corporate capacity and its business as alleged, and that defendant's husband was a member of the association in his lifetime, becoming such member in October, 1909, and continuing in good standing during the remainder of his life, and that plaintiff is his widow and duly appointed beneficiary. It also admits that proofs of death were fur-

nished in due form and in due time, and that its membership is such that a single assessment will produce more than $5,000. It denies, however, that the benefit contract is as alleged by plaintiff, and denies that it is indebted to plaintiff upon said contract in any sum whatever. It further alleges that, under its contract, liability to pay benefits can arise only when the death of a member results from bodily injury produced through external, violent and accidental means, independent of all other causes, and that the right to demand and receive such benefits is subject to the limitations and conditions of its constitution and by-laws as they stand at the date of the death. It further alleges that, at the time when the deceased received his injury, the laws of the association provided that the association should not be liable for the disability or death of a member resulting from infection, except as provided in Section 3 of Article 6 of the by-laws, which is hereinafter set forth in full. It is finally alleged that the proofs of death furnished by plaintiff disclosed the fact or claim that the deceased, in cranking a motor car, received a slight abrasion on the leg, and that the wound became infected by certain bacteria known to the medical profession as streptococci, which produced blood poisoning, ending in death, and that, after investigation by the defendant, it became convinced that the death of the deceased did not result solely and without intervening cause from an accidental injury, but that death was caused or contributed to by reason of a diseased condition existing in the body of such member long prior to the date of said accident. Defendant therefore refused to acknowledge liability to any extent beyond $500, which sum it tendered to plaintiff, who refused to accept it, and defendant alleges that the tender has since been kept good and is brought into court for plaintiff's use.

At the close of the testimony, the defendant moved for a directed verdict in its favor, on the ground that, under the terms of the contract and under the conceded facts, it conclusively appears that plaintiff was not entitled to recover.

The motion having been overruled, plaintiff moved for a directed verdict in her favor for the sum of $5,000 and interest, because there appears to be no conflict in the evidence requiring the consideration of the jury, and plaintiff's right to recover is manifest upon the face of the record. This motion was sustained, a verdict returned as directed, and judgment entered accordingly.

No error is assigned upon the failure or refusal of the court to send the issues to the jury, and the sole question before us is the construction and effect of the contract, and whether the evidence is sufficient to sustain a finding that the death of plaintiff's husband was a casualty, upon the happening of which defendant had undertaken to pay the full benefit of $5,000, mentioned in the certificate sued upon.

The testimony relating to the death of the member is very brief and wholly undisputed. It is, in substance, as follows: The deceased and one Sterling were driving an automobile. During the trip, deceased had occasion to crank the engine, and in so doing said to his companion that he had hurt himself, and rubbed his knee several times. On arriving home, he told his wife that he had nearly broken his leg, and that in cranking the car he had hurt his left leg below the knee. This was on Thursday evening, August 20, 1914. The next morning, he continued to complain, rubbed the leg and said that it was sore. On Saturday, he was still suffering pain. On Sunday, he was worse, and a physician was called; but he continued to fail until his death on the following Thursday. So far as surface appearance was concerned, the marks of injury were slight, being chiefly indicated by a red streak or scratch below the knee. The attending physician testifies that, when he was called to treat the deceased, he found him suffering from a very virulent case of "streptococci poisoning," commonly known as blood poisoning or septicæmia, and that there was an apparent abrasion of the skin upon the left leg just below the knee. In the opinion of the witness, the blood

poisoning was without doubt introduced into the system of deceased through the injury to his left leg. He adds:

"The cause of his death was undoubtedly streptococci poisoning, and I am sure there was no other cause which contributed to his death, nor was he diseased in any other way at the time. I am unable to give an opinion as to when he got the poisoning, except that it must have been at least 48 hours prior to the time I was called to see him. Streptococci germs may get into the system from the open air and it is impossible for them to get into the system except through an abrasion of the skin, thus permitting the bacteria to get into the blood. It is possible the germs got into his system through exposure of the wound to the open air or from touching an article or in almost any way; there is no way to tell how it happened."

As stating the terms and conditions of the contract sued upon, the plaintiff relies upon the following provision of the defendant's articles of incorporation, which is substantially embodied in the certificate:

"Article V. Section 10.—The association shall pay to the beneficiary designated in writing by any member of the accident department, who must be either the surviving wife or an heir of such member, the proceeds of one assessment of two dollars on each member of the accident department in good standing at the time of the accident to an amount not exceeding $5,000 on account of the death of any member of the accident department occurring within 90 days from the happening of the accident and resulting directly and without intervening cause from a bodily injury sustained by the member while in good standing and affected solely by external, violent and accidental means, subject only to the conditions, provisions and limitations of the by-laws."

And, as limiting and modifying the effect of such provision, the defendant relies upon certain of its by-laws, reading as follows:

"Article IV. Section 2.—This association shall not be

liable to any member of the accident department, nor to any person claiming by, through or under any certificate issued to a member, for the payment of any certificate issued to a member, for the payment of any benefits or indemnity on account of disability or death resulting from poison, voluntarily or involuntarily taken, administered, absorbed or inhaled or from contact with poisonous ivy or other poisonous animal, mineral or vegetable substance, or resulting from the inhalation, voluntary or involuntary, of illuminating or other gas; or resulting from infection, except as provided in Section 3 of Article VI of these by-laws.

"Article VI. Section 3.—Whenever, as the direct result of an injury occurring solely by external, violent and accidental means, the skin or the outer covering of the eye shall be abraded, cut or punctured, and there shall be introduced into the system through said abrasion, cut or puncture, and by the very instrument or means causing said abrasion, cut or puncture, any specific bacteria, which shall, within a period of 10 days after said injury, produce septicæmia, pyæmia or tetanus, or any other kind of blood poisoning or infection, the liability of the association for the payment of the benefits or indemnity on account of disability, loss or death resulting therefrom shall in no case exceed the amount of $500."

I. The fundamental proposition upon which appellant relies is that the evidence failed to establish that the death of plaintiff's husband resulted directly and without intervening cause from the injury received; in other words, even if the effect of the by-laws upon the extent and scope of the insurance be disregarded, the blood poisoning is still an "intervening cause," within the terms of the contract, and there can be no recovery on the contract. In the words of the brief:

1. INSURANCE: accident insurance: abrasion of skin: septicæmia: intervening cause.

"The proof established only that a bodily injury insignificant in itself furnished a portal of entry for the streptococci which poisoned the blood stream and produced death.

It was not even in the most technical legal sense a *cause* of death. It was merely a passive condition.''

Counsel candidly admit that, in *Delaney v. Modern Accident Club,* 121 Iowa 528, this court reached a conclusion which is directly opposed to the proposition for which he here contends, and asks that we now overrule it as unsound. To that end, he takes up and reviews the several authorities cited in that opinion, criticises its reasoning, and undertakes to demonstrate that the holding is indefensible upon the principle.

We are not prepared to thus introduce confusion into our cases. The precedent thus established has stood the test of time unchallenged for the last 12 years or more; there is nothing intrinsically unjust in the doctrine there affirmed; and the opinion has the support of the weight of authority. It takes up and considers the very proposition which counsel now urges us to affirm, and, upon both principle and precedent, rejects it as unsound. Upon such consideration, the conclusion was reached that:

''It is wholly immaterial when or how the specific bacilli which caused the disease known as blood poisoning which resulted in the death of Delaney were introduced into the wound, whether at the time it was inflicted or subsequently. Blood poisoning is a disease, just as many other pathological conditions of the human system resulting from the introduction therein of other specific bacilli are diseases. . . . It is wholly immaterial whether the pathological condition which resulted in death was due to bacilli or not. The simple question is whether the death of Delaney resulted through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous.''

This conclusion was concurred in by the entire court. It has since been cited and followed in *Lehman v. Great Western Acc. Assn.*, 155 Iowa 737, 740; *Caldwell v. Iowa St. T. M. Assn.*, 156 Iowa 327, 329; *Simpkins v. Hawkeye C. M. Assn.*, 148 Iowa 543; *Rathjen v. Woodmen Acc. Assn.* (Neb.), 141 N. W. 815; *Moon v. Order* (Neb.), 146 N. W. 1037.

That the cases cited by the author of that opinion may not all present an exact parallel with the one there being considered is not particularly important. They do deal with the interpretation of contracts of the same general character, and affirm rules and principles in point with the position there taken. For example, the opinion in *Omberg v. United States M. A. Assn.*, 101 Ky. 303, dealing with a case of blood poisoning from the bite of an insect, says:

"The blood poisoning was consequent on the wound; the bite would, therefore, be the proximate cause of death."

In *Freeman v. Mercantile M. A. Assn.*, 156 Mass. 351, it is said:

"An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and *this is so as well when death comes through the medium of a disease directly induced by the injury* as when the injury immediately interrupts the vital processes."

Thus we might go again over the precedents cited by the author of that opinion and note where each, in some of its features, is fairly in point in the matter then under discussion, but we think it unnecessary. The cases so mentioned are but few of the very many holding to the principle of the *Delaney* case, and we suggest with all due deference that even the savage assault thereon which counsel indulges in cannot disturb its standing as respectable authority.

To hold as counsel contend for would tend to but one result, and that is that the defendant association could be held to liability upon its contracts for no death loss whatever except

where death is the instant result of the accident; for, if the
injured party survives any substantial length of time, there
are numerous diseases of traumatic origin, some one of which
is practically certain to make its appearance, lay its hand upon
the injured body and thus become the medium or instrument
through which the injury effects its fatal result. Yet in all
such cases, if the appellant is right in this case, the inter-
vening disease is an independent intervening cause, and the
insurance does not cover the loss so occasioned. That such is
not the reasonable interpretation of the contract has so often
been held that we are hardly justified in consuming time and
space to add to the citation of authorities made in the *Delaney*
case. We venture, however, to quote from Judge Sanborn, in
*Western C. T. Association v. Smith,* 29 C. C. A. 223. There
the injury was an abrasion of the skin upon the toe of the
injured person, caused probably by wearing an ill-fitting shoe,
and this was followed by blood poisoning. The court says:

"If the death was caused by bodily injuries effected by
external, violent and accidental means alone, the association
was liable to pay the promised indemnity. If the death was
caused by a disease which was not the result of any bodily
infirmity or disease in existence at the time of the accident,
but which was itself caused by the external, violent and acci-
dental means which produced the bodily injury, the associa-
tion was equally liable to pay the indemnity. In such a case,
the disease is an effect of the accident, the incidental means
produced and used by the original moving cause to bring
about its fatal effect, a mere link in the chain of causation
between the accident and the death, and the death is attribu-
table, not to the disease, but to the *causa causans*—to the acci-
dent alone."

To the same effect is *Cary v. Preferred Acc. Ins. Co.,* 127
Wis. 67. This also was a case of blood poisoning, not mate-
rially unlike the case at bar, and the court there says:

"The bacterial infection and the resultant septicæmia

were in the natural course of events dependent upon and set in motion by the abrasion of the skin caused by the fall. The entry of bacteria into the system cannot be considered as an independent cause and as having intervened between the accidental fall and the death because of the fact that it was conditioned on the existence of the abrasion of the skin and was wholly incidental to and set in motion by it, thus making it one of the events in the chain of causation."

The list of authorities affirming this rule is very great, but enough has been mentioned to show the trend of judicial thought upon the subject. It is true that cases may be found giving some support to the views advanced on the part of appellant, but they are not in harmony with the course of our own decisions and are opposed to the weight of authority in other jurisdictions.

II. It is next argued that, even if the decision in the *Delaney* case be adhered to, the insurance contract in the present case was prepared after that decision was announced, with the express purpose of avoiding liability in cases of this nature, and that, as the association may lawfully choose for itself the classes of risks against which it is willing to offer indemnity, the court should give effect to that purpose. Counsel may know the impelling motive and purpose of the change in the phraseology of the contract, but the court can ascertain such purpose by reference to the contract alone. Without stopping to examine the record in the *Delaney* case, we think that we are correct in saying that the contract there considered was substantially what appears in this case in Article 5, Section 10, of the articles of incorporation which we have above quoted. But, if it be true that the words "without intervening cause," now appearing therein, are a part of the change subsequently made, they add nothing whatever to the meaning or effect of that section; for the limitation of the insurance to members dying "solely by acci-

2. INSURANCE: accident insurance: policy: construction: "without intervening cause."

dental means" necessarily excludes deaths attributable to the intervention of some other cause. Reliance seems to be placed particularly upon the effect of the provisions of the two other sections quoted from the by-laws of the association. Of these sections, the one last quoted (Section 3 of Article 6) seems at first blush to be without relevance to this case, as it professes to deal solely with accidental injuries to the "skin or the outer covering of the eye." If, however, a critical reading and interpretation of this language should justify the conclusion that the word "skin," as there employed, has reference to the skin of the body generally, and not simply to the "outer covering of the eye," such reading does not, for reasons which we are about to state, relieve the defendant from liability to pay the promised indemnity. The exceptions made in the contract to the general liability assumed by the association in Article 5, Section 10, of its articles of incorporation, are found in Article 4, Section 2, of the by-laws, which is also quoted in a previous paragraph of this opinion. The excepted cases there listed include all those where death has resulted from poison voluntarily or involuntarily taken, administered, absorbed or inhaled, and from contact with poisonous ivy or other substance, mineral or vegetable, or resulting from the inhalation of gas, *or resulting from infection.* It is upon the last clause, "or resulting from infection," that appellant plants its chief defense. The argument is that the deceased did not die from the accidental injury received, but from the blood poisoning which followed the injury; that blood poisoning is infection or the result of infection; and the case is therefore within the plain meaning of the exception. This brings us once again to the same question which is considered in the first paragraph of this opinion, and that is, conceding that the injury to the deceased was in its origin comparatively slight and not necessarily fatal, and that blood poisoning

3. INSURANCE: accident insurance: policy: construction: "skin or outer covering of eye."

4. INSURANCE: accident insurance: proximate cause: "death resulting from infection:" non-applicability of clause.

through the wound either accompanied the injury or followed it as a natural consequence thereof, and that blood poisoning is infection within the proper significance of that word, and that this series of events led in natural order to the death, does it follow that the proximate cause of such death was the infection or blood poisoning, or was it the original injury? We have already expressed our agreement with the precedents which hold that in such cases the original injury is the sole proximate cause, and that the death in such case is not a "death resulting from infection," within the meaning of the contract. The court has had very recent occasion to consider the principle here involved, in an opinion by Ladd, J., where the cases are quite thoroughly reviewed, and a result is reached contrary to the contention of the appellant. See *Berry v. United Commercial Travelers,* 172 Iowa 429. We content ourselves at this point with an additional reference to a pertinent authority upon the true meaning of "proximate cause:"

"The proximate cause . . . is the dominant cause, not the one which is incidental to that cause, its mere instrument. . . . 'The inquiry must always be whether there was any intermediate cause *disconnected from the primary fault* and self-operating, which produced the injury.' " *Insurance Co. v. Boon,* 95 U. S. 117, 133.

IV. Finally, we wish to note the issue tendered by the defendant's answer. The only plea there offered, except that of bare denial and a plea of tender, is the affirmative allegation that its refusal to recognize plaintiff's claim and pay the promised benefits was upon the ground that it had investigated the claim and found or believed that the death of the deceased did not result solely and without intervening cause from an accidental injury, but that the death was contributed to by reason of a diseased condition existing in the body of deceased *"long prior to the date of the alleged accident."* It would seem that appellant here selected the ground on which it chose to contest the plaintiff's claim,

5. PLEADING: matters specially pleaded: insurance clause limiting liability.

though it was wholly lost sight of in the court below, and is not urged in this court. No evidence of any kind was offered in its support, nor is there anything in the record from which such an inference could be drawn. It follows that the only issues here to be considered are such as are raised by the denials in the answer, and to these we have given sufficient attention.

For the reasons stated, the judgment of the district court is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.

DEEMER, J.—I do not wish to dissent from the conclusion reached in this case, because of the nature of the issues tendered by the defendant; but, to avoid any misapprehension as to the effect of defendant's by-laws, Article 4, Section 2, and Article 6, Section 3, I wish to emphasize the thought that, if the issue had been properly tendered, I think the case should at least have gone to the jury, for it to determine whether or not the death of the assured resulted directly from an abrasion or cut of the skin, through which there was introduced into the system, by the instruments or by the means causing the abrasion or cut, specific bacteria, which, within a period of 10 days after the injury, produced blood poisoning or infection, and that, had the jury so found, the limit of plaintiff's recovery would have been $500. We must give these two by-laws some effect, and the most that can be said for them is, that, if the pleader had properly tendered the issue, defendant is liable for the death of assured, due to blood poisoning or infection, to the full amount of the policy, in the event that the germ which was brought into the system was not introduced through an abrasion or cut, but in some other way, and that the abrasion or cut was the direct result of an accident. I am not prepared to say, in view of the issues tendered and the motion filed by defendant, that the question is now before us as to whether the matter should have gone to the jury at all. What I wish to be clear about is this: In my opinion,.

had the issue been properly tendered, defendant, on the testimony appearing in the record, was entitled to have the question above mooted submitted to a jury.   Defendant undoubtedly intended to limit its liability in certain cases of blood poisoning or infection, and had enough testimony to take the case to the jury upon the question of its limited liability.

For these reasons, I am impelled to file this separate opinion.