**Anna Christ, Appellee, v. Pacific Mutual Life Insurance Company, Appellant.**

**Gen. No. 7,583.**

1. INSURANCE—*typhoid fever contracted by drinking polluted water as accidentally caused.* Death of the insured from typhoid fever is shown to have resulted from bodily injury, caused solely by external, violent and accidental means, within the meaning of the provision of a combination policy insuring against the effects of bodily injury or death so caused and also providing for the payment of a monthly indemnity for sickness, where the facts are stipulated and show that deceased, without knowledge of the contamination, drank water which had become polluted and contaminated by sewage, and that the water contained typhoid fever germs from which he contracted that disease and died.

2. STIPULATIONS—*construction of stipulation of facts as to cause of death.* A provision in a stipulation of the facts as to the cause of death of the insured who died of typhoid fever, that such disease is an "idiopathic" one, must be construed in connection

with the facts therein agreed upon, and does not operate to vitiate the express statements therein that deceased died of typhoid fever contracted by drinking water polluted with sewage but which he believed to be pure and wholesome water, and that the disease was caused by the taking of germs into his system with the water and that such germs created a toxin in the intestines from which the fever results.

3. INSURANCE—*drinking polluted water as proximate cause of death from typhoid fever.* Insured is shown to have suffered accidental bodily injury within the meaning of an insurance policy indemnifying against death so caused and the taking of typhoid fever germs into the system in polluted drinking water, rather than the resulting typhoid fever, is shown to have been the proximate cause of death, where the stipulated facts show that deceased, believing the water to be pure and fit to drink, drank water which had become contaminated with sewage, that the germs therein created a toxic condition resulting in the fever from which he died, and that the intervening disease would not have resulted except for the polluted condition of the water.

4. INSURANCE—*when exact date of injury need not be shown.* In an action for insurance under a policy indemnifying against death caused by accidental bodily injury, predicated on the death of the insured from typhoid fever contracted by drinking water contaminated with sewage, recovery is not defeated by plaintiff's failure to show the exact point of time prior to the date when the fever set in, when the injury was received, it being alleged that deceased drank the polluted water several times during the week preceding that date, especially where no question was raised as to the sufficiency of the notice of death to the insurer and the death in question was within the terms of the policy in suit.

Appeal by defendant from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding. Heard in this court at the April term, 1923. Affirmed. Opinion filed July 10, 1923. *Certiorari* denied by Supreme Court (making opinion final).

LIVINGSTON & WHITMORE, for appellant.

RICHARD M. O'CONNELL, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This was a suit brought upon a special accident and health policy issued by appellant to William H. Christ.

The policy is set out in full in the declaration. It is a combination policy. The first part of the policy provides under certain circumstances for the payment of indemnities on account of accident; the second part of the policy provides for indemnities in the event of sickness. This suit is brought upon the first part of the policy, or for a claimed accident to the insured.

The facts in the case were submitted to the court without a jury on a stipulation of facts. There was no other evidence. The insurance policy provides for the payment of indemnity "against the effects of bodily injury sustained during the term of this policy and caused solely by external, violent and accidental means" in the principal sum of $1,000. The policy also provides for a sickness monthly indemnity against the effects of sickness as defined in the policy to the extent of $60 per month for a limited period. The principal sum of $1,000 under the policy is only payable in the event of death, the result of bodily injury caused solely by external, violent and accidental means.

The stipulation of facts shows that during the months of January and February, 1920, the drinking water system of the C. & A. Railroad Company, where the insured was employed at said time, became contaminated and polluted by sewage; that this condition existed on February 3, 1920; that about one week prior to February 3, 1920, the insured, being uninformed of the condition of said drinking water, several times drank water, which he drew by means of a faucet from the system of water pipes, believing each time that the water was pure and fit for drinking purposes; that the said water he so drank was in fact filthy and polluted; that as a result and consequence of drinking said water he became sick and ill, with a result that typhoid fever set in February 3, 1920, and that he continued with such sickness uninterruptedly until February 17, 1920, on which day he died as a result of said disease.

442    APPELLATE COURTS OF ILLINOIS.

Christ v. Pacific Mutual Life Insurance Co., 231 Ill. App. 439.

It was further stipulated that typhoid fever is an idiopathic disease; that it is the result of a toxin created by germs; that the germs creating the toxin which results in typhoid fever are taken by food or drink or contact with substances having germs, and the toxin is formed in the intestines; that the germs may be present in a person and not create a toxin and may be harmless, while in other persons the germs create the toxin and result in fever; that typhoid fever may be prevented and avoided by innoculation of antitoxin; that it may be and is frequently carried by persons to others, such persons being known as "typhoid carriers"; that typhoid fever is usually and customarily not a fatal sickness, and that the per cent of fatalities among typhoid patients is about eight per cent.

It was further stipulated that the controversy to be decided in this case is whether under the foregoing stipulated facts defendant is liable under that part of the policy providing for death caused solely by external, violent and accidental means, or whether said defendant is liable under that part of the policy which provides for the payment in case of sickness or disease.

Upon the stipulation of facts, the lower court found the issues for the plaintiff and assessed the damages at $1,130, to which finding the defendant excepted. Judgment was entered for the plaintiff and the defendant, appellant, brings the cause to this court by appeal.

Appellant contends: First: That the insured did not die as a result of a bodily injury caused solely by external, violent and accidental means; second, that the death was caused solely by sickness and disease; and third, that typhoid fever, in accordance with the stipulation of facts, is an idiopathic disease and is not the result of bodily injury, and therefore does not come under the indemnities for accident insurance under this policy.

Appellant further contends: "That typhoid fever contracted by drinking water was not within the terms of the accident part of this policy is further clearly established by the fact that the term 'accident' implies that the particular event claimed to be the accident can be identified as to time," and that inasmuch as the stipulation fixes no specific time other than "about a week prior to February 3 the insured 'several times drank water,' which, unknown to him, was polluted," etc., no definite time can be fixed as to the occurrence of the accident and therefore it was not an accident.

Appellant further contends that the proximate cause of death of the insured was not a bodily injury, caused solely by external, violent and accidental means, but the death of the insured was the result of sickness and disease. The terms, "bodily injury," "external," "violent" and "accidental means" must be given due effect in the contract set out in this case, and we assume that the intent and meaning of these terms, in the instant contract, were the same as had been given to like and identical terms, in similar contracts, construed by the courts prior to the making of this contract of insurance.

It was held in *Hutton v. States Acc. Ins. Co.*, 267 Ill. 267, quoting *Prudential Casualty Co. v. Curry*, 10 Ala. App. 642, 65 So. 852, on page 272:

"An accident may be said to be an unforeseen or unexpected event of which the insured's own misconduct is not the natural and proximate cause, and hence a result ordinarily and naturally flowing from the conduct of the insured cannot be said to be accidental, even when he may not have foreseen the consequence, and the happening of an event, to be termed an accident, must not only be unforeseen but without the design and aid of the insured."

In this case the court went fully into the authorities, and again in *Higgins v. Midland Casualty Co.*, 281 Ill. 431, the authorities were again fully reviewed and the

444    APPELLATE COURTS OF ILLINOIS.

Christ v. Pacific Mutual Life Insurance Co., 231 Ill. App. 439.

cases, *United States Mut. Acc. Ass'n v. Barry,* 131 U. S. 100, and *Bryant v. Continental Casualty Co.,* 107 Tex. 582, 182 S. W. 673, were considered, and in the *Higgins* case (p. 437) the court say, quoting *Bryant v. Continental Casualty Co.,* with approval:

"The proper and true test, in all instances of voluntary action, is that defined in the *Barry* case. If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs which produces the injury, it is accidentally caused."

In the *Higgins* case the insured suffered a sunstroke while in the line of his duty in controlling traffic at a street intersection, and it was held by the court to be an accidental injury.

In *City of Joliet v. Industrial Commission,* 291 Ill. 560, the court again quotes the *Higgins* case with approval and says:

"In *Higgins v. Midland Casualty Co.,* 281 Ill. 431, the casualty insurance cases cited by counsel for the plaintiff in error were considered and we declined to follow them. Numerous other cases were reviewed in which the meaning of the terms 'accident' and 'accidental means' was discussed in connection with sunstroke and various other kinds of injuries. The sunstroke in that case, which affected a policeman while performing his duty in regulating street traffic, was held to have been accidental. The rule to be deduced from the discussion of the question in that case and the decisions cited in the opinion is that a sunstroke is an unexpected and unusual happening, and if it befalls one in the ordinary course of conduct it must be regarded as accidental and not the ordinary and natural result to be anticipated from such conduct."

The term "accidental means" has, therefore, come to have a certain and definite construction by our courts.

In the case of *Healey v. Mutual Acc. Ass'n,* 133 Ill. 556, the court, following *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472, held:

"In *Paul v. Travelers' Ins. Co.*, 112 N. Y. 472, the policy was substantially like the one in question here —indemnifying against injuries caused by external, violent and accidental means. The insured died from inhaling illuminating gas. He was stopping at a hotel in New York City. He was found dead in his bed, the room being filled with gas. When found the deceased lay in his bed like a man asleep, without any external or visible signs of injury upon his body. An action on the policy was sustained, and in disposing of the question whether the injuries were caused by external and violent means, the court said: 'As to the point raised by the appellant, that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere, as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death. That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause. The cases collated in the respondent's brief sufficiently establish that as a proposition. *Trew v. Railway Passengers' Assurance Co.*, 7 Jur. (N. S.) 878; *Reynolds v. Accidental Ins. Co.*, 22 L. T. (N. S.) 820; *McGlinchey v. Fidelity & Casualty Co.*, 80 Me. 251.' "

A policy of accident insurance is to be liberally construed in favor of the insured. *Higgins v. Midland Casualty Co.*, 281 Ill. 431; *Travelers' Ins. Co. v. Ayers*, 217 Ill. 390; *Travelers' Ins. Co. v. Dunlap*, 160 Ill. 642; *Healey v. Mutual Acc. Ass'n*, 133 Ill. 556.

The United States Circuit Court of Appeals, Ninth Circuit, in *Aetna Life Ins. Co. v. Portland Gas & Coke Co.*, 229 Fed. 552, L. R. A. 1916D 1027, held there was no *difference between taking poison and taking water laden with typhoid fever germs.*

This case was brought under an employer's liability policy which insured against claims for damages on account of *bodily injuries or death accidentally suffered*. In the course of their work, plaintiff's employees *contracted typhoid fever from water which they drank*, and the sole point decided was whether the harm so

done to the workmen constituted "a bodily injury accidentally received or suffered by them, within the meaning of the policy."

The same holding was made by the Supreme Court of Michigan in *Johnson v. Fidelity & Casualty Co. of New York,* 184 Mich. 406, 151 N. W. 593, L. R. A. 1916A 475. Deceased died from ptomaine poisoning resulting from eating tainted food, and claim was made under a policy covering death as the result of an accident. The court said: "No question would be raised here, I take it, if the assured by mistake had taken carbolic acid, when he intended to take a helpful medicine. *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642. Why, then, should it be said there is no liability when the assured, intending to take nourishing food, in fact took tainted food, which resulted in ptomaine poisoning and death?"

In holding that there was no difference in taking poison and drinking water containing typhoid germs, the court said (229 Fed. 553): "Of course, it is not and cannot be doubted that the workmen were bodily injured by the drinking of the water in the course of the work, for it contained typhoid germs, which gave them typhoid fever; but it is insisted upon the part of plaintiff in error that in drinking the water they were but satisfying a natural want, and that in doing so there was no accident about it. It is readily conceded, of course, that there could be no accident in merely drinking water; but it is just as certain that the men would not have drunk it had they known that the water contained typhoid germs. The accident consists in that unexpected happening. Among the definitions of the word 'accidental,' in most, if not in all, of the dictionaries, is the happening of 'something unexpectedly, unintentionally.' Suppose, instead of containing typhoid germs, as in the present case, the water that the employees of the assured consumed had contained some of the most virulent poisons, would

anyone contend that the injuries resulting therefrom could not be properly held to have been accidentally inflicted? We think not, and yet, in our opinion, there is no substantial distinction between the case supposed and the case at bar.''

Practically the same question was before the Supreme Court of Wisconsin in *Vennen v. New Dells Lumber Co.*, 161 Wis. 370, 154 N. W. 640, decided by the Wisconsin Supreme Court in 1915. In that case, just as in this one, there was a leakage of contaminated water from one system of pipes to another, and the deceased drank water while at work from the system of pipes into which the contaminated water had leaked. He contracted typhoid fever therefrom and died. The action was brought under the Wisconsin Compensation Law which provided compensation "where the injury is proximately caused by accident." The court held that deceased's sickness was the result of an unintended and unexpected mishap, and his death was proximately caused by accident.

The *Vennen* case proves to be exceedingly similar to the case at bar when it is noted that the court defined the term "accidental" as used in compensation laws as denoting something unusual, unexpected and undesigned, corresponding very closely to the definition of the term given in the *Barry* and *Higgins* cases, and showing that the case was decided on the same basic principles.

Appellant contends that the opinion in the *Vennen* case is founded upon the case of *Turvey v. Brintons, Ltd.* [1904], 1 K. B. 328, and that the case of *Liondale Bleach, Dye & Paint Works v. Riker*, 85 N. J. L. 426, 89 Atl. 929, clearly shows that the *Brintons* case has not been followed by the later cases in England, and where it was pointed out that in the *Brintons* case the court held "accident" under the Compensation Law to include "those events which were not only the result of violence and casualty, but also those resulting conditions which were attributable to and caused by

events that take place without one's foresight or expectation."

In *Turvey v. Brintons, Ltd.* [1904], 1 K. B. 328, "a workman employed in a wool-combing factory, in which there was wool which had been taken from sheep infected with anthrax, contracted that disease by contact with the anthrax bacillus that was present in the wool. The Court of Appeal held that the workman was injured by accident. The judgment was affirmed by a majority of the judges of the House of Lords, [1905] A. C. 230. To what extent the result turned on the finding of the trial judge that the anthrax was caused by the accidental alighting of a bacillus on the deceased does not clearly appear in the opinion, but Lord Lindly, who agreed with the majority, expressed approval of a remark of Cozens-Hardy, L. J., in the court below, that he should be sorry to hold that every disease contracted by a workman on the premises is a disease contracted in the course of the employment, or a result arising from accident in the course of employment. It has since been held that the decision of this case turned on the specific findings of the trial judge."

In later cases, and one in which the workman slowly and gradually accumulated poison in the system from the handling of red and white lead, the ruling was different. Cozens-Hardy, L. J., distinguished the anthrax case because there the impact of the bacillus upon the particular spot where the disease developed was proved as a fact, the source of the bacillus was known, the place at which it struck the subject was known and the accident was known. We do not find that the *Turvey v. Brintons, Ltd.*, case has been overruled, even in England, where there was a specific finding of fact as in the *Turvey* case. The point of time of attack is considered of importance and idiopathic cases are distinguished, in which the depleted physical condition of the workmen is held to be the proximate cause of the injury, and the contention of

"accidental means" of death, in slow-moving diseases, overruled.

From the cases cited and from *United States Health & Accident Ins. Co. v. Harvey*, 129 Ill. App. 107; *Rich v. Hartford Accident & Indemnity Co.*, 208 Ill. App. 506; *Sutter v. Massachusetts Bonding & Insurance Co.*, 215 Ill. App. 341; *Ballagh v. Interstate Business Men's Acc. Ass'n*, 176 Iowa 110, 155 N. W. 241, L. R. A. 1917A 1056; *United States Fidelity & Guaranty Co. v. Hood*, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605, 7 A. L. R. 1141 note, and the many cases cited in these opinions, we are fully convinced that the weight of authority is that the insured, when death ensues by reason of the unexpected and unusual poisoning of the system by foul drinking water or noxious food, under the terms of the policy in question, does, in fact, come to his death by reason of bodily injury, caused solely by external violence and accidental means, and that this is the law in Illinois.

But appellant urges, under the stipulation, that the poisonous germs in the water were the cause or source of the disease typhoid fever, and that the insured died of the disease typhoid fever, and that typhoid fever is an "idiopathic" disease, which is defined as a "morbid state or condition, not preceded or occasioned by any other disease; not secondary or arising from any other disease, as an idiopathic affection" (Century Digest). "Not in consequence of some other disease or an injury" (Webster).

If it is meant by this, in the case at bar, that the insured's typhoid fever occurred without a specific cause, then such construction is in violation of other parts of the stipulation, which agree that the poison germs in the foul water were the cause of the disease. Still, if it is conceded that the inoculation of the poison germs, in and of itself, is not a disease but an injury, then the use of the word "idiopathic" is consistent with the definitions generally and only contradicts a portion of Webster's definition.

The use of the word "idiopathic" in the stipulation is not altogether clear, but under the rules of construction, it should not be permitted to vitiate the plain terms of the stipulation. It is agreed that the water was contaminated and filthy; that the insured, being uninformed, drank of this water, in the usual course of his work, supposing it to be pure water; that by reason of the drinking of said water the insured became sick and ill, and that typhoid fever had its primal cause in the drinking of said polluted water. Whether typhoid fever is an "idiopathic" disease, under these circumstances as set out in the stipulation, is of no importance. It has been held in such cases that the taking in of the poison germs is the proximate cause of death, regardless of the intervening disease. *United States Health & Accident Ins. Co. v. Harvey, supra; Rich v. Hartford Accident & Indemnity Co., supra; Sutter v. Massachusetts Bonding & Insurance Co., supra; Ballagh v. Interstate Business Men's Accident Ass'n, supra;* and *United States Fidelity & Guaranty Co. v. Hood, supra.*

In *Rich v. Hartford Accident & Indemnity Co., supra,* Mr. Justice Carnes, delivering the opinion of the court, on page 510, said:

"It is there said [122 Ill. App. 507] the evidence tended to prove that the infection entered some time after the wound was made, and 'be that as it may, if the prime cause of the death can be said to have been septicemia and not the wound itself, there would be some force in appellant's contention that there can be no recovery under the first count in the declaration. It is manifest, however, that the insured would not have contracted septicemia had he not received the wound. Otherwise the poisonous germs with which he came in contact would have been harmless.' " (Quoting numerous cases.)

And again on page 511 it is said:

"Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an

independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous."

In *United States Health & Accident Ins. Co. v. Harvey, supra,* it was held:

"The rule, where infection or blood poisoning is one of the excepted risks, in any accident policy, is that if the resulting disability is the effect of the accident, so as to be a mere link in the chain of causation between the accident and the disability, then the disability must be attributed to the accident alone, and is not excepted from the risk. The puncture by the wire or nail was within the terms of the policy, and blood poisoning resulting from and being caused by the accident was a disease caused by the accidental wound and is within the policy. *Central Acc. Ins. Co. v. Rembe,* 220 Ill. 151; *Delaney v. Modern Acc. Club,* 121 Iowa 528; *Martin v. Manufacturers' Acc. Indemnity Co.,* 151 N. Y. 94; *Western Commercial Travelers' Ass'n v. Smith,* 56 U. S. App. 393, 85 Fed. 401, 40 L. R. A. 653.

"The company was, upon principle and under these authorities, clearly liable to appellee for all necessary loss of time resulting from the accidental puncture of his hand."

In the *Ballagh* case, *supra,* it was held that the infection of a wound with streptococci, causing blood poisoning and death, does not prevent the wound from being the direct cause of death, without intervening cause within the meaning of an accident insurance policy; and in *United States Fidelity & Guaranty Co. v. Hood, supra,* at page 574, it is held:

"An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes."

In *City of Joliet v. Industrial Commission, supra,* the court said (p. 558):

"The admission that sunstroke is a disease will not deprive the victim of it of a right to compensation under the Workmen's Compensation Act, if the disease was the result of an accident."

We think we have said enough to show that the holding in Illinois and the weight of authority outside of this State is that when death is the result of an injury, either caused directly or the result of a disease introduced directly as a result of the injury, and not an intervening independent disease, then the death is proximately caused by the injury. When the injury is the result of an unforeseen or unexpected event of which the insured's own misconduct is not the natural and proximate cause, then it becomes an accidental injury and is covered by the terms of the insurance contract in this case. A careful reading of the stipulation in this case indicates that the insured, in every respect, suffered an injury by accidental means. Appellant's argument that if the injury in question can be denominated an injury by accidental means, then, in case of any disease, the foundation of which is some violent, destructive germ, the same construction could be utilized, and it, the disease, in every such case, construed as caused by accidental means. The *Hutton* case plainly makes the broad distinction that where the insured's own misconduct is the natural and proximate cause of the result, and where the result is that which ordinarily and naturally flows from the conduct of the insured, such result is not brought around by accidental means. It is the duty of every person to use due care and caution in the protection and preservation of human life and health and such duty arises in the instinct of the love of life and the preservation of health, and it is a duty much more pronounced in case of those who enter into contracts, based upon the uncertainty of human life.

We know that exercising the highest degree of care,

following the usual, ordinary and expected course of human events, disease-bearing germs will creep in and, too frequently, are the ordinary and natural result of our manner of living and the danger in this respect is always accentuated by our own carelessness and neglect. Results or disease brought about, under such circumstances, plainly, under the definition in the *Hutton* case, are excluded from the domain of "accidental." Those that come within the definition are those that are out of the ordinary, unusual, unforeseen and unexpected and not contributed to by the misconduct of the insured. That this dividing line may throw many cases into a doubtful zone does not render void the rule. Under the stipulation in question, we can see no doubt at all as to the classification of the case at bar.

It is contended by appellant that the term "accidental injury" has a different meaning as applied to the Workmen's Compensation Act from that applied to accident insurance, and it is true it has been held in *Matthiessen & Hegeler Zinc Co. v. Industrial Board,* 284 Ill. 383, that the Workmen's Compensation Act and the terms "accident" and "accidental injury" used in the act were meant to include every injury suffered in the course of employment for which there was an existing right of action at the time the act was passed, and that the terms have various definitions. But we have followed in this case the rules cited in insurance cases, and the compensation cases have only been reviewed as explanatory of the principle discussed.

Appellant contends that under the stipulation in this case the injury cannot be construed as an "accident" or "accidental," because no certain, fixed or definite point of time during the week prior to February 3, 1920, can be arrived at as the exact time of the injury. No point is raised as to the sufficiency of the notice, under the policy of insurance in this case, and no authority is cited as the basis of this contention. If the

injury suffered was caused by accidental means, as we have held, and proper notice was given, we cannot see that it is material that the evidence should show the exact point of time when the injury was inflicted. Indeed, as is likely in this case, the injury was the result of a series of blows, injections or attacks continuing through the week, any one of which might or possibly all of which were necessary to cause the injury.

Finding no error in the judgment of the circuit court of McLean county, the same is affirmed.

*Affirmed.*