Werner C. Vollrath, Administrator of the Estate of Homer Vollrath, Deceased, Appellee, v. Central Life Insurance Company of Illinois, Appellant.

## Gen. No. 8,002.

1. INSURANCE—*construction of policy against insurer.* Where there is doubt as to the meaning of terms employed in a policy of insurance, the language, being that of the insurer, must be liberally construed in

favor of the insured, so as not to defeat, without plain necessity, his claim to indemnity which, in making the insurance, it was his object to secure.

2. INSURANCE—*when death accidental within double indemnity clause.* Death caused by paralysis of the respiratory organs, resulting from the administration of ether in preparation for an operation to re-⁰ move the tonsils of a patient apparently in suitable condition for such an operation, held death by accidental means within the terms of a double indemnity clause of a policy of life insurance.

Appeal by defendant from the Circuit Court of De Witt county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed December 29, 1926.

W. H. HINEBAUGH and W. F. GRAY, for appellant.

HERRICK & HERRICK, for appellee.

MR. PRESIDING JUSTICE CROW delivered the opinion of the court.

The suit below was assumpsit upon an insurance policy for $1,000, containing a clause for double insurance benefit in case of accidental death. The clauses of the policy pertinent to a disposition of the question presented for decision are:

"In event this policy becomes a recognized claim as a result of accidental death, the Company will pay double the face of the policy, subject to the conditions and privileges herein contained, and in accordance with the clause, 'Double Insurance Benefit from Accidental Death.' * * *

"The Company will pay DOUBLE THE FACE OF THE POLICY, making the total amount payable under the conditions of this policy TWO THOUSAND DOLLARS ($2,000), Provided there is no default in any premium, and if the death of the insured results directly, independently, and exclusively of all other causes, from bodily injuries effected solely through external violent, and accidental causes, and while this

policy is on a premium paying basis, and before the insured has attained the age of sixty-five (65) years, and the said insured dies within ninety (90) days from the occurrence of said accident.

"This agreement to pay an increased amount in event of death from accidental bodily injury does not apply to death resulting from self-destruction, whether sane or insane; from violation of law or police duty; from military or naval service in time of war; from insurrection, war or riot; from engaging in submarine or aerial voyage, or engaging in any operation pertaining thereto; from physical or mental infirmity, or from illness or disease of any kind, including ptomaine poisoning.    *    *    *''

To the declaration, defendant filed a plea of tender of $1,000 and costs accrued to that time. The general issue was filed denying the several promises charged in the declaration. Defendant replied, admitting satisfaction to the extent of $1,000 and claiming $1,000 additional by reason of the accidental death of Homer Vollrath. The cause was tried by jury which found for the sum of $1,054.03. Motion for new trial having been denied, judgment was rendered for that amount and defendant appeals.

There is no controversy as to the facts. The statement of facts made by the respective counsel does not materially differ. Homer Vollrath was 24 years old at the time of his death. He was about 6 feet tall, weighed 180 to 185 pounds. He went to the John Warner Hospital in Clinton, Illinois, on the morning of his death for an operation to remove his tonsils. He was prepared for the operation and the examination was made of his physical condition by Dr. C. S. Bogardus who believed at the time that it was safe to administer an anesthetic and who began the administration of the anesthetic in the usual and approved manner, with an open mask by the drop method, after pro-

tecting his eyes. About two ounces of ether had been administered in this manner when an examination showed he was not completely anesthetized and the administration of ether continued for about two minutes longer, at which time anesthetization seemed to be complete. The mouth gag having been removed, it was again inserted, the tongue depresser again put on his tongue, when the muscles of the throat contracted, his chest became rigid, he stopped breathing and instantly died. The professional opinion of all the physicians was that death was caused by paralysis of the respiratory organs due to the effect of ether. A sensitive throat is mentioned, but only as a remote cause of death.

Deceased submitted voluntarily to the anesthetic and all that was done. The means employed were those usually and customarily adopted by reputable physicians in administering an anesthetic in such cases. There was no violence done to any external portion of the body. The treatment given deceased at and immediately before his death was given by skilful and competent physicians and the ether administered was of a standard quality. Death from the administration of ether, as shown by hospital statistics, occurs once out of 6,000 cases.

At the close of the evidence for the plaintiff and at the close of all the evidence the court overruled the defendant's motion to instruct the jury to find for the defendant. Death of the insured was not expected by any of the physicians. There was nothing to admonish them of the event, or of any danger attending the use of an anesthetic.

Appellant contends that there is no proof that the death of the deceased resulted directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental causes; that the cause of death was the administering of ether at the solicitation of the deceased himself and

intentionally administered by the attending physician; that there was no mishap or unexpected thing done to the deceased of any kind or character; but that the death of the deceased was solely the result of deceased's own physical condition at the time he entered the operating room.

From the undisputed facts upon which any judgment in this case must rest, only a question of law is presented. The first clause of the policy provides for indemnity for death in any event in the sum of $1,000. That amount was tendered and accepted. The trial proceeded as to the right of recovery under the double indemnity clause. The terms of the policy are before us. The fact of death of the insured, the manner by which it was produced, and all the circumstances attending it are in the record. The difference between counsel for appellant and for appellee, as to whether death was accidental as matter of law, is that between the application of one line of cases to which the courts of this State are firmly committed and the other line to which they have steadfastly refused to yield. Appellant invokes the latter, and appellee the former, cases.

In the consideration of these cases and the principles deducible from them, it is eminently proper, in view of the emphatic divergence of views of the courts, to apply the well-known rule of construction applicable to accident insurance policies, that where there is a doubt or uncertainty as to the meaning of the terms employed, the language, being that of the insurer, must be liberally construed in favor of the insured, so as not to defeat without plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure. *Travelers' Ins. Co. v. Dunlap*, 160 Ill. 642, citing *Healey v. Mutual Acc. Ass'n of the Northwest*, 133 Ill. 556; see also *Higgins v. Midland Casualty Co.*, 281 Ill. 431; *Christ v. Pacific Mut.*

*Life Ins. Co.*, 231 Ill. App. 439. This rule applies with peculiar force against appellant's contention. It not only wrote the language but when written it knew the trend of decision of this State on the probable points of controversy that might grow out of it. It might be unwilling to yield to the doctrine of the decisions, but it could provide a contract with terms that would avoid or avert it.

Appellant's contention in the brief is: "The direct, though unusual, result of a surgical operation, is not accidental means." This is a literal transcript of the first proposition in the brief of counsel for appellant in *Caldwell v. Travelers' Ins. Co.*, 305 Mo. 619, 39 A. L. R. 56, death from surgical operation, relied on here. It is followed by citation of many decided cases, none of which are from the courts of this State. Counsel for appellee in their brief in that case said: "The insured died by accidental means, within the meaning of the policy." This proposition is followed by citation of a far larger number of cases, including most of those in this State supporting the contention of appellee here. The divergence of doctrine from that followed in this State is found in the syllabus of the case:

"If the means which cause an injury are voluntarily employed in the usual and expected way, the resulting injury is not produced by accidental means within the meaning of an accident insurance policy, even though it was entirely unusual, unexpected, and unforeseen."

The view of the courts of this State may be stated as in *United States Mut. Accident Ass'n v. Barry*, 131 U. S. 100, 33 L. Ed. 60: "If, in the act which preceded the injury, something unforeseen, unexpected, or unusual occurred which produced the injury, then the injury resulted through accidental means."

Without incumbering this opinion with the citation of cases in which the *Barry* case has been approved, we refer to *Christ v. Pacific Mut. Life Ins. Co.*, 312

Ill. 525, affirming the judgment of this court reported in 231 Ill. App. 439, and the cases cited.

If the contention of appellant prevails, we must decline to follow our courts. We have no inclination to do that if we had the authority to do so. We can not attribute to our Supreme Court a misconception of the *Barry* case, *Paul v. Travelers' Ins. Co.* 112 N. Y. 472, and others upon which it relies. It is interesting to notice that the Missouri court reached the conclusion here relied on by overruling all decided cases of the courts of appeal of the State and by explaining or overruling its own decisions standing as an obstacle to its conclusion. In the course of it the following statement of the rule by the Court of Appeals is quoted and swept away:

"In the foregoing cases (those not in harmony with ours) it seems to us a too strict and illiberal definition of the term (accident) was adhered to. At any rate they are not reconcilable with the general trend of the best-considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequences of the act. 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' 4 Cooley, Briefs on the Law of Insurance, pp. 3156, 3157. Joyce says an accident 'may be an unusual event attending the performance of a usual and necessary act, or unusual effect of a known cause.' Joyce on Insurance, § 2863."

"From the foregoing (the Supreme Court continues) it is clear the court intended to hold and did hold that an injury or death, which is the unexpected result of an intentional act, is injury or death by accidental

means, regardless of proof of mischance or mishap in the performance of the act which produced the result.''

That doctrine repudiated in the *Caldwell* case is stated in 1 C. J. 427, § 73. Decided cases by the Supreme Court of the United States and by the courts of nearly every State of the Union are cited in support of it. It is illustrated by reference to specific application in decided cases. Among these is the administration of chloroform by physicians in preparation for a surgical operation in *Beile v. Travelers' Protective Ass'n of America,* 155 Mo. App. 629.

The principle of liability urged by appellant being at variance with that of our courts so often announced, we must decline to follow it. But appellant insists that the evidence shows that death under the circumstances did not result directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental causes. That the cause was accidental, external and violent is so far settled as not to admit of discussion appears from the *Christ* case, *supra,* and cases there cited. The question now recurs, Did death result directly, independently and exclusively of all other causes than that of ether administered as an anesthetic?

The evidence shows that the vapor of ether is an irritant. It is usually employed in operations of the character now under inquiry. There was nothing wrong with its quality and it is not contended that the quantity was excessive. The surgeons attending the deceased were of the highest professional character and all had many years of experience in the use of anesthetics, including ether. Not a word is found in the record suggesting incompetency. Nothing unfavorable is shown in the environment, nor the course of preparation of the patient for the operation. He had consulted his physician as to the operation and appeared at the hospital at the time appointed for it. Every preparation for it was that usually employed.

The administration of it began in the usual way and in a few minutes a "bluish color" was manifested in his face, his chest became rigid, and he died instantly. No account is given or ventured as to any possible external cause of death other than the inhalation of ether.

Under these uncontroverted facts attending death, appellant contends that the insured had a sensitive throat and tonsilitis and that death must be attributed to one or both of these conditions, under the terms of the policy. It argues that having a sensitive throat, though in vigorous health, and having voluntarily submitted to the operation, and paralysis of the respiratory centers or system having resulted, that was the cause and there can be no recovery. This contention is based on a misapprehension of the meaning of the terms of the policy. That ether was a cause of death is not denied. If there were other contributions to death, they were of a different character. If it had not been administered, it cannot be contended he would then have died. Having been administered, and death immediately following, it must have been the cause of death. The sensitive throat may have been an occasion or condition contributing to the fatal result. But under the rules applicable, the first efficient cause, without which other circumstances, occasions or conditions would not account for the disaster, must be attributed to that which set in motion the others or rendered them active, however numerous.

The principle is applied to a policy upon the same contentions now made, in *Bohaker v. Travelers' Ins. Co.,* 215 Mass. 32. The circumstances under which insured lost his life were these: He was delirious by reason of severe typhoid fever, in a room with a single window covered by a screen, its sill being 28 inches above the floor. Along the outside of the building, slightly below the window, was a balcony, 5 feet wide, with a protecting railing, about 30 feet above

the rough and stony ground. He was left alone momentarily on an August evening by his attendant, who, on returning, found the room vacant and the screen torn from the window. The insured was immediately found on the ground unconscious, with severe injuries, which, according to the physicians, would have caused his death, even if he had not been suffering from typhoid fever. The policy insured ''against bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means (suicide whether sane or insane is not covered).'' Upon the foregoing facts stated in the opinion, the cause was tried by the court who found for the plaintiff after refusing to rule as requested by defendant (1) that the plaintiff was not entitled to recover as matter of law; (2) that the death of insured was not effected, directly and independently of all other causes, through external, violent and accidental means; (3) that the death of insured was the result of suicide, sane or insane, and not covered by the policy.

Rugg, C. J., said:

''(1) The defendant's first request was denied rightly. 'Accidental means,' is used in the contract of insurance in its common significance of happening unexpectedly, without intention or design. (Citing the *Barry* case, 131 U. S. 100.) The cause of injuries was not wholly conjectural as matter of law. · It is plain that the immediate cause was the fall. This manifested itself in evidence which was violent and external. There was basis for the inference that it was accidental, as we have defined that word. It may have been that the deceased, in the heat of his fever and the warm season, in an effort to reach fresh air went to the balcony just outside his window, and there without premeditation or purpose or delirium, but only through weakness, lost his balance and went over the low railing and received mortal harm. Cases

where it has been necessary for a plaintiff to show negligence of some person as the cause, and where it has been said the cause was conjectural, are clearly distinguishable. Accident is a far more comprehen- sive term than negligence. *Noyes v. Commercial Travelers' Eastern Accidental Ass'n,* 190 Mass. 171, 76 N. E. 665; *Wicks v. Dowell* [1905] 2 K. B. 225.

"(2)  It would have been error to rule as matter of law that the insured's death was not effected 'directly and independently of all other causes' through accidental means. The point of difficulty in this connection is whether the disease did not con- tribute to the injuries, or at least was it not a cause co-operating with the fall in inducing the result. But the disease may have been simply a condition, and not a moving cause of the fatal injuries. A sick man may be the subject of an accident, which but for his sickness would not have befallen him. * * * In *Manufacturers' Indemnity Co. v. Dorgan,* 58 Fed. 945, at page 954, 7 C. C. A. 581, at page 590, 22 L. R. A. 620, it was said by Taft, J. 'If the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slip- ping, the drowning in such case would be the prox- imate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause.' To the same effect in substance are *Winspear v. Ac- cident Insurance Co.,* 6 Q. B. D. 42; *Lawrence v. Insurance Co.,* 7 id. 216; *Ludwig v. Preferred Acci- dent Insurance Co.,* 113 Minn. 510, 130 N. W. 5; *Preferred Accident Insurance Co. v. Muir,* 126 Fed. 926, 61 C. C. A. 456. The language of this contract, to the effect that the 'accidental means' must have operated 'independently of all other causes' to pro- duce the death. does not change the general rule of

law, that the proximate and not the remote cause is the one to which the law looks. Many instances are found where two equally dominant causes co-operate or concur in producing a result. The very numerous cases arising out of joint or simultaneous torts are illustrations. Two or more causes, each proximate in character and only one of which is accidental, may co-operate in producing an injury. In such cases the limiting language of the policy would apply.

"(3)  The present policy does not stipulate that there shall be no recovery, if any other circumstance than the accident, directly or indirectly, wholly or in part, proximately or remotely, contribute to the injury, as do some insurance contracts which have been before the courts. The policy in the case at bar does not go so far as to require the court to search beyond the active, efficient, procuring cause to a cause of a cause. When one single predominant agency is disclosed, directly producing as a natural and probable result the injury, which is accidental, and which operates independently of other like causes, then the effectual means required by the policy have been found. This contract does not require a further and nicer analysis to ascertain whether in the chain of causation another source less demonstrative and more attenuated in its effect or more ulterior in its origin may be found which may more indirectly have a causal connection with injury."

It is not satisfactory to say that paralysis was the cause of death for that was the result produced by ether under circumstances rendering the result unexpected. It is not a sufficient account to say a sensitive throat was the cause, for it was only an *occasion,* upon or through which an adequate agent operated, though the result was not and could not be anticipated. The sensitive throat was a condition unknown to the competent physicians attending the operation. Whether if they had known of that pathological condition they

would have been apprised of the lurking danger, does not appear and is immaterial. Their testimony with regard to it is not that they are positive but offer it as a hypothesis by way of accounting after the fact for the unexpected result of the proper and usual administration of ether. But whatever view is adopted, the generally harmless agent unexpectedly resulted in death by reason of an unknown and perhaps unusual occasion. The basis for expecting a successful use of the anesthetic is that only one in 6,000 cases result fatally. But if ether operating upon a sensitive or vigorous throat caused death, we do not understand that originating externally it was not an external cause of death under the many decisions of our courts and the courts of other States. If the system of the insured had been depleted by illness, and ether administered by physicians of the professional skill and knowledge possessed by those operating on him, and death had followed, as matter of scientific inference as well as of law, the unexpected death must be attributed to ether as the external and efficient cause. Proximity in time of assigned cause and alleged effect is not necessarily the test of causation. The assigned cause may be only an occasion or casual event. But if the assigned cause be eliminated and the effect would not follow, the necessary inference is that the assigned cause is the actual and proximate cause. Having found that, all else is immaterial. Inquiry is arrested.

The doctrine of proximate and remote causation is well illustrated in *Ætna Ins. Co. v. Boon*, 95 U. S. 117, 24 L. Ed. 395, as applied to loss under a fire insurance policy. A city hall was set on fire to destroy military stores therein to prevent their falling into the hands of the enemy then entering the city. The fire spread to several buildings finally reaching and destroying the insured property of plaintiff. A proviso in the policy excepted from liability loss or damage by fire happening or taking place by means of invasion, insurrection,

riot, or civil commotion, or of military or usurped power. The opinion was delivered by Mr. Justice Strong. Applying the reasoning of writers and of decided cases to the facts he said: "The conclusion is inevitable, that the fire which caused the destruction of plaintiffs' property happened or took place, not merely in consequence of but by means of the rebel invasion and military or usurped power. The fire occurred while the attack was in progress, and when it was about being successful. The attack, as a cause, never ceased to operate until the loss was complete. It was the *causa causans* which set in operation every agency that contributed to the destruction.   *   *   *

"The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss.   *   *   *   It was one of a continuous chain of events brought into being by the usurped military power—events so linked together as to form one continuous whole."

In *Waters v. Merchants' Louisville Ins. Co.,* 11 Peters (U. S.) 213, 9 L. Ed. 691, the question presented in a marine insurance policy was whether a fire or an explosion of gunpowder causing the destruction of the vessel and cargo was the proximate cause of loss, the explosion being last in the succession of events. It was said:

"Some suggestion was made at the bar whether the explosion, as stated in the pleas, was a loss by fire, or by explosion merely. We are of opinion that as the explosion was caused by fire, the latter was the proximate cause of the loss."

Applying the principles so aptly stated in the *Bohaker* case, *supra,* this is not an action for a tort. The cause of action grows out of contract. In tort actions, especially in actions based on negligence, the object of inquiry is to connect the circumstance which is the cause of action with a responsible human will. In such

cases foreseeableness is the test. What might a reasonably prudent person under all known circumstances have foreseen? There prescience is the test. But in cases arising out of contract providing indemnity under its terms, the parties are bound by their stipulation and not by what they might have stipulated or foreseen. Integral parts of the stipulation are statutes and judicial decisions determining their obligation. There was here one predominant cause of death. No other is suggested that will directly account for it. This fact is and must be always determined after the result. Whatever account may be given, it is clear and indisputable that ether employed was that predominant agent or cause. Its almost universally beneficent effect was deflected by physical conditions then unknown producing the fatal effect undesigned and unexpected by all. Death was therefore caused within the terms of the policy.

Though errors may have intervened at the trial, no other result would have been within the law under the undisputed facts. The judgment is therefore affirmed.

*Affirmed.*